RILEY v. CHARLESTON UNION STATION CO.

INJUNCTION—CONDEMNATION.—Where the allegations of a complaint to enjoin the condemnation of lands under statute by a railroad corporation make out a *prima facie* case denying the right of the corporation to condemn, it is error to dissolve a temporary injunction without trial on merits.

Before WATTS, J., Charleston, April, 1903. Reversed.

Action by Ann Riley and John F. Riley against Charleston Union Station Co., on the following complaint:

"That plaintiffs above named, complaining of the defendant above named, allege:

"1. That the plaintiffs, Ann Riley and John F. Riley, are each of them citizens of the State of South Carolina and of the United States, and residents of the city of Charleston, State of South Carolina.

"2. That the defendant, Charleston Union Station Co., claims to be a corporation created by and under an act of the General Assembly of the State of South Carolina, approved 20th February, 1902, set forth in full at pages 1168, 1169 and 1170 of the 23d volume of the Statutes at Large of the State of South Carolina, reference to which is prayed in full as often as may be necessary.

"3. That the plaintiff, Ann Riley, widow, is the owner

in fee simple of all that piece or parcel of land, with residences and buildings thereon, situate, lying and being on the south side of Reid street, in the city of Charleston, State of South Carolina, measuring and containing in front on Reid street 165 feet, same on South street, by 200 feet in depth on the east and west lines, butting and bounding to the north on Reid street, to the south on South street, to the east on Bay street, and to the west on land of M. Quinlivan. That the said plaintiff, Ann Riley, widow, has her home and residence on that part of the said lot, being the northeast corner of Reid and Bay streets, where she has lived for over twenty years, and now as widow occupies as her home, and that she has leased a portion of the said lot, being at the southeast corner of Bay street and South street, to plaintiff, John F. Riley, on which he has erected large machine shops, iron foundry and boiler works, from which she has received and is receiving large rental, said lot being most favorably situated for such business by reason of its advantageous central location.

"4. That the plaintiff, John F. Riley, is lessee of a portion of said lot on the southeast corner of Bay and South streets, whereon he has erected large machine shops and boiler works and iron foundry, and wherein he has established and for many years conducted, and now conducts, business as a machinist, boiler maker and iron foundryman, and same has been, and now is, in full and active operation, employing a large force of skilled workmen, and being one of the largest iron works in the city of Charleston.

"5. And that the said John F. Riley had also located and established large and extensive iron works and plants and machinery permanently in said shops, and has been, and is now, in large manufacturing operations, and filling large business orders, and said lease, and said machine shops, iron foundry and boiler works are of great value, because of the central business stand and location, and by reason of the long establishment of over nineteen years of the said works at such place, and also because of the advantageous location in

terminal facilities for such business, and the same is absolutely necessary to the said plaintiff, John F. Riley, for the future successful conduct of his trade and business and industries.

"6. That the defendant, the Charleston Union Station Co., claiming to be incorporated by and under authority of the said act of the General Assembly of the State of South Carolina, approved 20th February, 1902, proceeding under and by authority of the said act, caused to be served upon each of the plaintiffs, on the 12th day of February, 1903, a notice in condemnation on the said property, copy of which is hereto annexed, marked 'Exhibit A,' reference to which is prayed, and in and by which notice said defendant claims that it 'is authorized to acquire by condemnation land or easements therein for the purposes of its incorporation and for the construction of the tracks necessary and incident thereto,' and for the purpose of said defendant a right of way over the said land of plaintiff, situated in the city of Charleston, is required, and the right of way so required is delineated on the plat of the same, annexed to the notice as part thereof, marked 'Exhibit A,' which shews twelve tracks and turntables upon said lot of land, and four tracks passing through the residence and home of the plaintiff, Ann Riley, and four tracks and turntables passing through the machine shops, boiler works and iron foundry of plaintiff, John F. Riley, to the complete destruction of said house, machine shops, boiler works and iron foundry.

"7. That in and by said notice, said defendant has further notified said plaintiffs 'that unless within thirty days of the service thereof upon you, you shall in writing duly signify your refusal, the said Charleston Union Station Co. will presume that your consent has been given, and shall enter upon and take and hold said right of way, according to the provision of the said statutes aforesaid. In case of your refusing or remaining silent, the said Charleston Union Station Co. will proceed to have a jury empanelled to ascertain the

amount which shall be paid you as just compensation for the right of way required as aforesaid.'

"8. Plaintiffs further allege that on the 12th day of March, 1903, previous to the commencement of this action, these plaintiffs have served on the defendant a notice of their refusal of consent of entry upon, or condemnation of, said lands or right of way thereon by said defendant company, a copy of which notice is hereto annexed as 'Exhibit B.'

"9. And plaintiffs further allege that the said defendant, claiming to act under the said act of the General Assembly as aforesaid, intends to proceed to condemn the said rights of way in said land, and to enter upon and occupy the same without the consent and against the will of the plaintiffs, the owner and lessee thereof, now in possession and use of the same, and to prevent the plaintiff, Ann Riley, widow, from further use and occupation of her home, with its associations for many years, in great violence to her feelings, and to the destruction of the·established and prosperous trade and industry and business aforesaid of John F. Riley, lessee, to the great, grievous and irreparable wrong and injury of the said plaintiffs.

"10. The plaintiffs further allege that in and by the said act of the General Assembly of South Carolina, the defendant company is authorized to acquire, by purchase or condemnation, only such property as may be necessary for the purposes of its incorporation and operation as set forth in said act, more particularly reference to which is prayed.

"11. Plaintiffs further allege that the right of way claimed and required by the defendant over said land of the plaintiff heretofore particularly described is not necessary for the purposes of its incorporation and operation as particularly set forth in said act.

"12. And plaintiffs further allege that the Southern Railway Co. and the Atlantic Coast Line Railroad Co. are the only two railroad systems entering the city of Chareston and having their termini in the city of Charleston; that officers of the said two railroad systems are the corporators and offi-

cers of the said defendant company, and all the stock of said defendant company was subscribed and now owned by the said Southern Railway Co. and Atlantic Coast Line Railroad Co., and that under and by the terms of the said act of the General Assembly the said union station can now be leased or used only by the said Southern Railway Co. and the Atlantic Coast Line Railroad Co., both and each of which said railroad systems already have as railroad corporations, and the successors of railroad corporations, land heretofore already condemned for public use by and under power of eminent domain, situated in the city of Charleston, suitable and sufficient and advantageously located for such union station for use of such railroads and all other railroads, and it is not necessary, but oppressive, to further exercise the power of eminent domain of the State of South Carolina by and through the said defendant company to condemn and take from the plaintiffs forcibly their lands and home and destroy their business for the benefit of the said Southern Railway Co. and the Atlantic Coast Line Railroad Co., in addition to the lands now already owned by the said railroad systems, and each of them capable of serving the same public purpose and use.

"13. Plaintiffs further allege that the said act of the legislature of South Carolina of incorporation of the defendant, the Charleston Union Station Co., is on its face and under the facts herein alleged unconstitutional, null and void on the following grounds, to wit: in that the same is repugnant to and in violation of the fifth and fourteenth amendments to the Constitution of the United States, prohibiting the depriving of any person of his property without due process of law, taking of private property for public use without just compensation, and denying to any person the equal protection of the law.

"14. And plaintiffs further allege that the said act of incorporation of the Charleston Union Station Co., is on its face and under the facts herein alleged in this complaint, is also unconstitutional, null and void on each of the following

grounds, to wit: in that the same is repugnant to, and in violation of, (a) Article I., section 5, of the Constitution of the State of South Carolina, in that it deprives plaintiffs of their property without due process of law and denies to plaintiff the equal protection of the laws.    (b) Article I., section 17, of the Constitution of South Carolina, in that it takes private porperty for private use and in that it takes private property for alleged public use without just compensation being first made therefor.    (c) Article III.., section 17, of the Constitution of the State of South Carolina, in that it relates to more than the one subject expressed in its title. (d) Article III., section 34, of the Constitution of the State of South Carolina, in that it being a case where for the establishment and incorporation of union stations in the State of South Carolina, a general law can be made applicable, a special law (to wit: said act) has been enacted.    (e) Article IX.; section 2, of the Constitution of the State of South Carolina, in that the same, not being a general law, but a special law, amends the existing charter of the railroad companies now entering Charleston, to wit: The Southern Railway Co. and the Atlantic Coast Line Railroad Co., by conferring the right upon such railroad companies to guarantee the principal and interest of the bonds of said Charleston Union Station Co. and to guarantee the performance of any other contract whatsoever, that such Union Station Co. may make in regard to its corporate interest, and also in that it confers upon such railroad companies the right to subscribe to and hold stock in, or bonds of, the said Charleston Union Station Co.    (f) Article IX., section 20, of the Constitution of the State of South Carolina, providing that no right of way shall be appropriated to the use of any corporation until full compensation therefor shall first be made to the owner or secured by a deposit of money, irrespective of any benefit from any improvement proposed by such corporation. (g) Article VIII., section 4, of the Constitution of South Carolina, in that the said act of incorporation granting the right to lay and to operate railroad track or tracks along the

streets of Charleston and on the said streets abutting the said premises of plaintiff, as claimed, set forth and delineated in such plan attached to 'Exhibit A,' filed in this Court, was passed by the General Assembly without first obtaining the consent of the city council of Charleston, in control of the streets proposed to be occupied by defendant for such purpose.

"15. The plaintiffs further allege for the reasons hereinbefore specifically set forth, the said proceedings of condemnation begun and threatened on the part of the defendant under the alleged act of incorporation, are and would be without authority of law and without due process of law.

"16. That plaintiffs further allege that the said defendant claims and insists that the said alleged proceedings in condemnation under said act of its incorporation are statutory proceedings to be strictly followed and enforced, and the plaintiffs are deprived therein and thereby of any and all opportunity to raise any of the questions aforesaid, or to protect their right of property and use and occupation of the same; and if defendant is permitted to proceed under the said alleged act, the plaintiffs will suffer irreparable injury and, against their consent and will, be deprived of their property and the use and occupation of the same, and suffer the destruction of the great industrial works and ruin of plaintiff's trade and business now being conducted thereon, as aforesaid, to their great damage, and the said property will be taken by the said defendant without an opportunity having been afforded to these plaintiffs to assert and maintain and defend their rights of property before this Court.

"17. That plaintiffs have no adequate remedy at law, and can be relieved and protected only by the interposition of a court of equity, where matters of this nature are cognizable, and by an injunction of this honorable Court.

"Wherefore, plaintiffs pray judgment as follows:

"1. That the defendant, the Charleston Union Station Co., and all persons acting under it, and also all of its servants, agents, officers, employees and attorneys, be perpetu-

aly enjoined and restrained from proceeding, or attempting to proceed, under its said act of incorporation to condemn the land or right of way over the land and premises of the plaintiffs, hereinbefore particularly described, and from entering, or attempting to enter, upon the land and premises of the said plaintiffs, or either of them, or from taking possession of or appropriating to its use the lands or right of way over the same as aforesaid.

"2. That in the meantime and until the final hearing of this cause, this Court do issue a temporary injunction enjoining and restraining the said defendants from doing, or attempting to do, the acts hereinbefore set forth and as hereinbefore prayed.

"3. For such other and further relief as may be just and equitable."

From Circuit order dissolving temporary injunction, plaintiffs appeal.

*Messrs. Bryan & Bryan,* for appellants, cite: *On question decided:* 2 Lewis on Em. Dom., 892, 894-5; 9 Rich., 228; 10 Ency., 1050-1, 1054, 1057, 1068, 1069; 38 S. C., 318; 63 S. C., 348, 199; 58 S. C., 21.

*Messrs Joseph W. Barnwell, W. Huger FitzSimons* and *P. H. Gadsden,* contra. *No citations on point decided.*

July 10, 1903. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an appeal from the refusal of his Honor, the Circuit Judge, to grant an interlocutory order of injunction. The action was commenced in the Court of Common Pleas to enjoin the defendant perpetually from further action in the condemnation proceedings, instituted under the act of the General Assembly, entitled "An act to incorporate 'the Charleston Union Station Company,'" approved 20th February, 1902 (page 1168). The grounds upon which the plaintiffs seek the aid of the Court in the

exercise of its equitable powers are set forth in the complaint, which will be reported. The right of the defendants to institute the said condemnation proceedings is brought in question by the plaintiffs, and the *sole* object of the plaintiffs' action is a perpetual injunction against such proceedings. His Honor, the Circuit Judge, made the following order:

"This case comes on to be heard before me upon the return to the rule to show cause heretofore issued, and the papers and affidavits filed in the cause. The case has been duly argued before me, and I am of the opinion that the constitutional questions which are raised by the complaint should not, at this stage of the proceedings, be passed upon by the Court. The only question which is for the consideration of the Court, under the present motion, is as to whether or not the Court should continue the injunction heretofere granted, in order to preserve the *status quo* until the final hearing on the merits.

"Upon a careful consideration of the case, I feel satisfied, and so find, that there can be no injury to the plaintiffs in this cause by the proposed proceedings in condemnation, which could not be adequately compensated under the statute providing for condemnation, and the plaintiffs, in my judgment, have failed to show, even *prima facie,* that the lands proposed to be condemned are not necessary and essential to the construction and operation of the proposed union station. In view of the facts and findings, and of the great public interest involved, I have decided to set aside the restraining order heretofore granted, and, therefore, it is ordered, adjudged and decreed, that the restraining order heretofore granted be, and is hereby, set aside and vacated, and the rule to show cause herein discharged."

The plaintiffs appealed from said order upon exceptions which need not be considered in detail, especially as some of them raise questions that are only proper for consideration when the case is heard upon the merits.

The only question that can be considered at this stage of the case is whether the plaintiffs have made *prima facie*

showing for the equitable relief by way of injunction. *Alston* v. *Limehouse,* 60 S. C., 568-9, 39 S. E., 188. It is well settled in this State by numerous authorities that the statutes relating to condemnation proceedings thereunder do not provide the procedure for determining the *right to institute such proceedings.* The remedy under the statute for determining this right is, therefore, inadequate. When rights are to be adjudicated and the statutes do not provide adequate remedy in the condemnation proceedings, the proper practice is for the party asserting such right to bring an action in the Court of Common Pleas, and the Court, in the exercise of its chancery jurisdiction, will, upon a *prima facie* showing, enjoin the condemnation proceedings until the right to institute the proceedings under the statute can be judicially determined. In this case the plaintiffs made a *prima facie* showing entitling them to the injunction, and his Honor, the Circuit Judge, was in error in not so holding. These views are sustained by the following authorities: *Ry. Co.* v. *Ridlehuber,* 38 S. C., 308, 17 S. E., 24; *Cureton* v. *R. R. Co.,* 59 S. C., 371, 37 S. E., 914; *R. R. Co.* v. *Tel. Co.,* 63 S. C., 201, 41 S. E., 307; *R. R. Co.* v. *Burton,* 63 S. C., 348, 41 S. E., 451.

There is another reason why the temporary order of injunction should not have been refused. The plaintiffs' action was brought *solely* for obtaining an injunction, and the refusal to grant the temporary injunction practically disposed of the case without a hearing upon the merits. In *Cudd* v. *Calvert,* 54 S. C., 457, 32 S. E., 503, the Court uses this language: "It seems to us where, as in this case, the action is brought solely for the purpose of obtaining an injunction, and where, if the facts alleged in the complaint are found to be true, a proper case for injunction would be presented, it is error to dissolve a temporary injunction upon a mere motion heard upon affidavits, as that would deprive the plaintiff of his legal right to have the facts determined in the mode prescribed by law instead of by affidavits—a most unsatisfactory mode of eliciting truth. Indeed, the

practical result in a case like this would be to dismiss the complaint upon a mere motion heard upon affidavits, without any opportunity being afforded the plaintiff to have the facts, upon whch he bases his claim for relief, determined in the mode prescribed by law. For if in this case the injunction should be dissolved, there would be nothing to prevent the issue of bonds before the case could be heard on its merits, and if the bonds passed into the hands of innocent holders without notice, as they might and probably would do, then the controversy would become absolutely useless. If, therefore, the facts alleged in the complaint can be established upon a trial on the merits, where the witnesses can be subjected to examination and cross-examination, then we do not think it can be denied that the plaintiffs would be entitled to the injunction prayed for. The authorities cited by appellants in their argument sustain the view we have taken. 2 High on Inj., 3d edit., secs 1509, 1511 and 1512; *Seabrook* v. *Mostowitz,* 51 S. C., 433." See, also, *Oil Co.* v. *Ice Co.,* 62 S. C., 196, 40 S. E., 169.

The Circuit Judge in his order says: "I feel satisfied, and so find, that there can be no injury to the plaintiffs in this cause by the proposed proceeding in condemnation, which could not be adequately compensated under the statute providing for condemnation." If the plaintiffs were compelled to look solely to the condemnation proceedings for relief, this would destroy their right to show that the condemnation proceedings could not be instituted, and that is the question in the case to be finally determined when it is heard upon the merits. The ruling of the Circuit Judge presupposed that the condemnation proceedings will be adjudged to be valid. If the condemnation proceedings are illegal, the defendants should not be allowed to take the property of the plaintiffs and force them against their will to accept the compensation provided by the statute.

It is the judgment of this Court, that the order of the Circuit Court be reversed.