13522

KING, INSURANCE COMMISSIONER v. AETNA INSURANCE CO.

(167 S. E., 12)

*Messrs. John M. Daniel, Attorney General, Cordie Page* and *J. Ivey Humphrey, Assistants Attorney General,* for petitioner

*Messrs. Tobias & Turner,* for respondent,

November 23, 1932.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The verified petition of the petitioner, Sam B. King, as insurance commissioner of the State, in this cause, filed in the original jurisdiction of this Court, presented to Mr. Justice Stabler, shows the following essential matters:

The petitioner is charged with the duty of collecting licenses and taxes, authorized and required under the laws of the State from fire insurance companies transacting business in the State, and it is his duty, for just cause, to cancel

and revoke licenses of such companies upon their failure to comply with the laws. The three respondents are fire insurance companies, incorporated under the laws of some state or states other than this State, and they are engaged in transacting the business of fire insurance in this State by virtue of licenses issued to them by the insurance commissioner. The total or gross premiums received by the respondents from their business in this State amount to many thousands of dollars annually, and it is upon such premiums that the respondents are required to pay to the State, for the privilege of carrying on their business in the State, certain taxes or license fees. Under the provisions of Section 7949, Volume 3 of the Code of 1932 (Act of the General Assembly of 1931, 37 Stat. at large, 390), the respondents are required to pay, in addition to certain license fees already required of them under the law, "a graduated license fee in an amount equal to one (1%) per cent. of the total or gross premiums collected without making any deductions for returned premiums and premium on reinsurance," and the insurance commissioner has demanded payment of the license fees required by the mentioned statute. The respondents contend that they are required, under Section 7949 of the Code, to pay the additional license fee of 1 per cent. only "upon the net premiums received from their insurance and retained by them as part of their assets; that they are not required to pay said tax on 'returned premiums' or upon premiums for reinsurance." The commissioner notified the respondents that they must pay the license fees provided for under the Act upon the total or gross premiums, without making the deductions contended for by the respondents, and that, if such payment was not made, the licenses of the respondents to carry on their business of fire insurance in this State would be canceled and revoked. Upon the receipt of that notice, the respondents instituted a suit in the United States District Court for the Eastern District of South Carolina against the insurance commissioner, for the purposes of

having the statute construed and restraining the commissioner from enforcing it, pending the hearing for an interlocutory injunction, which suit is now pending in that Court.

The petition further alleged that the action here was brought by the commissioner for these purposes: To secure a construction of the statute and to enforce its provisions; to require the respondents to show by what authority they continue to transact their business of fire insurance in this State without complying with the terms of the statute; to require the respondents to show why their licenses to do business in the State should not be canceled for their failure and refusal to pay the required license fees; and to enjoin the respondents from carrying on their business of fire insurance in this State, except by paying the additional license fees on their total premiums demanded by the commissioner.

In response to the petition, Mr. Justice Stabler, by his order, required the respondents to show cause *in this Court* why the Acts referred to in the petition should not be construed and enforced, and why they should not be enjoined and restrained from carrying on their business of fire insurance in this State, except by compliance with the Acts and the rules and orders of the insurance commissioner issued thereunder, and why the relief prayed for in the petition should not be granted. In accordance with the provisions of Section 266 of the Judicial Code of the [United States, as amended (Section 380, Title 28 U. S. C. A.), providing for a stay of proceedings in the Federal Court, pending the final determination of a suit in the State Courts, involving the validity and construction of a State statute, Mr. Justice Stabler, in his order, restrained the insurance commissioner, and all other persons, "from in any wise enforcing any of the Acts" mentioned in the petition, "or any of the Rules and Orders of" the insurance commissioner thereunder.

Pursuant to the order of Mr. Justice Stabler, the respondents filed in this Court their sworn return, which, while interesting and informative as to the manner of conducting the business of fire insurance companies, is, in many respects, argumentative. A careful study of the return shows that the essential facts of the petition are admitted, and that there are but three legal positions set forth for our determination. Those positions are as follows:

(1) The only method by which an order, ruling, or decision of the insurance commissioner can be reviewed, under the statutes of this State, is found in Section 7946, Volume 3, Code of 1932, which gives the right of review "by *certiorari* or mandamus proceedings before any Circuit Judge or justice of the Supreme Court," which, it is said, "denies to these respondents the right to appeal to the United States Courts, and is, therefore, a denial of due process of law, and in contravention of Section 1, Amend. 14, of the Constitution of the United States of America."

(2) The statute (Section 7949, Volume 3, of the Code) permits fire insurance companies to deduct from the total premiums collected "return premiums."

(3) Premiums collected from reinsurance are transactions originating and concluded wholly without this State, and are not subject to be taxed under the statute.

The respondents ask this Court to issue its order requiring and directing the commissioner to receive and collect the tax imposed by the Act of 1931 (Section 7949 of the Code), in accordance with their contention; that they be allowed to continue the transaction of their business in this State without hindrance or molestation; and that the injunction issued by Mr. Justice Stabler, temporarily restraining the commissioner from putting into effect his intended revocation of the licenses of the respondents, be made permanent and final.

Later, the respondents interposed a demurrer to the petition on the following grounds:

First. That this Court is without jurisdiction of the cause, or of the respondents, for four reasons: (a) That it does not appear in the petition that the action could not have been brought in the Court of Common Pleas, in the first instance, without material injury to the rights of the parties; (b) that the petition does not show that the public interests are involved, or that there exists special grounds of emergency or other good reasons for the exercise of the original jurisdiction of this Court; (c) that the order herein having been made by one of the justices of this Court, at chambers, during vacation, and not by the Court itself, the order should have been made returnable before that justice and not before the Court, since this Court has only appellate jurisdiction in status; (d) that the petition shows that the real and sole purpose of the action is to oust the United States District Court of jurisdiction to hear and determine the suit, instituted in that Court by the respondents, and to enable the petitioner to obtain a stay of proceedings in that Court until an adjudication can be had in this Court on the same issues.

Second. That the petition does not state facts sufficient to constitute a cause of action, because: (a) It does not appear from the petition that the petitioner has suffered, or is about to suffer, any grave or irreparable injury or damage; (b) there is no allegation that the petitioner does not have a full, adequate, and complete remedy at law; (c) it appears that the petitioner does have a full, adequate, and complete remedy at law, under the provisions of the Acts sought to be construed, namely, a revocation of the licenses of the respondents, and the power to enforce such remedy without recourse to the Courts; (d) it does not appear from the petition that any power or authority has been conferred upon any of the Courts of this State, by statutory enactment, or otherwise, to "construe" a statute upon the request of any branch or department or official of the State government and no facts are stated in the petition from which jurisdiction may be inferred.

Third. There is no equity in the petition.

Fourth. No Court of the State has any jurisdiction or power to "suspend" the operation of a statute upon the request of any branch, department, or official of the State, or to restrain the enforcement thereof, except when the statute is alleged to be unconstitutional and invalid, and only then upon a suit by one who alleges its unconstitutionality or invalidity, and an actual, or threatened, invasion of the rights of the party bringing the action.

Fifth. That no Court in this State has jurisdiction to compel the payment, or to enforce the collection, of a license tax by an injunction or other equitable proceeding.

The orderly manner of disposing of the many questions involved herein requires consideration first of the demurrer, which course we pursue.

Subdivisions (a), (b) and (c), of the first ground, challenge the jurisdiction of this Court. These involve, as the respondents say, a construction of the provisions of Sections 4 and 15 of Article 5 of the Constitution, Section 26 of the Code of Civil Procedure of 1932, and Rule 20 of this Court.

Section 4 of Article 5 of the Constitution fixes the jurisdiction of this Court. Power "to issue writs or orders of injunction, mandamus, *quo warranto,* prohibition, *certiorari, habeas corpus* and other original and remedial writs" is given. Without discussing, we call attention to the provisions of Section 4 of Article 4 of the Constitution of 1868, wherein the jurisdiction of the Supreme Court was fixed by the Constitution adopted in that year. The provisions made as to the issuance of writs therein were much more limited than the provisions of the Constitution of 1895, for in the former such writs were to be issued only "to give it [the Supreme Court] a general supervisory control over all other Courts in the State." In the present Constitution, the power to issue the named writs extends much farther.

In Section 15 of Article 5 of our Constitution, the jurisdiction of the Courts of Common Pleas is fixed. Those Courts are given jurisdiction in all civil cases, with the right "to issue writs or orders of injunction, mandamus, *habeas corpus,* and such other writs as may be necessary to carry their powers into full effect."

Under the provisions of Section 26 of the Code of Civil Procedure, each of the justices of this Court is authorized, at chambers, to "issue writs of *habeas corpus,* mandamus, *quo warranto, certiorari,* prohibition and interlocutory writs or orders of injunction as when in open Court." The powers here given correspond with the powers given to the justices of this Court by Section 25 of Article 5 of the Constitution, not cited by the respondents.

We think respondents' counsel are correct in their view that, under the constitutional provisions now of force, a complainant in any action in which relief by way of injunction or other original and remedial writ is sought has, in a manner, "his choice of forum," and likewise they are correct in the assumption that Rule 20 was adopted for the purpose of this Court protecting itself in the orderly manner of conducting the business of this Court "from the tremendous burden of hearing originally an avalanche of cases."

Rule 20, in effect, provides that this Court, and the individual justices thereof, will not entertain motions for the issuance of writs, in the original jurisdiction, when such motions can be made in the Circuit Courts without material prejudice to the rights of the parties; and this Court, and the justices thereof, will only exercise the right to issue such writs, in the original jurisdiction, when it is shown that the public interests are involved, or that special grounds of emergency or other good reasons exist therefor, the facts showing the reasons to be stated in the moving papers, which are to be verified.

As we understand Subdivision (c) of the first ground of demurrer, the position is taken that Mr. Justice Stabler did not have the authority to require the respondents to make return to the writ issued by him to the whole Court; but that he should have made it returnable before himself alone, and, upon a determination by him of the issues, either party would have been entitled to appeal from his decision. With the stated position we are absolutely unable to agree. A careful reading of all the provisions of the Constitution relating to the Supreme Court, its jurisdiction, power, and authority, and those provisions and the provisions of Section 26 of the Code of Civil Procedure as to the jurisdiction, power, and authority of the individual justices of the Court, is convincing that any justice of this Court has the authority to issue the writs provided for in the Constitution, making them returnable to the Court.

But, if by chance we are in error as to our construction of the constitutional and statutory provisions, to which attention has been directed, particularly looking to those to which respondents have invited our examination, there can still be no doubt as to the correctness of our conclusion under the provisions of Sections 28 and 905 of the Code of Civil Procedure, which it seems escaped the attention of counsel. In Section 905, first enacted in 1870, authority was given to the justices of the Supreme Court to "make such rules for the orderly conduct of business in said Court as they may deem proper, not inconsistent with this Code of Procedure." In Subsection 4 of Section 28, passed in 1923, the General Assembly said the Supreme Court "shall have full power and authority to establish and promulgate such rules and regulations as may be necessary to carry into effect the provisions of this section and to facilitate the work of the Supreme Court."

The power to adopt Rule 20 was especially authorized by the last-mentioned sections. Section 3 of that rule, which it seems probable counsel overlooked, specifically states that

"applications for writs or orders in the original jurisdiction will be heard on the opening of the Court each day, *or may be heard by any Justice of the Court at any time.* * * *" (Italics added.)

It certainly cannot be said with any degree of force that the provision, permitting an application for a writ in the original jurisdiction to be made to a single justice of the Court, is in conflict in any way with the Code provisions. On the contrary, it helps "to facilitate the work of the Supreme Court," and aids in "the orderly conduct of business in said Court."

We have not been pointed to anything in our Constitution which forbade the General Assembly from enacting the provisions of Subsection 4 of Section 28, or the provisions of Section 905 of the Code. The spirit of those sections manifestly is consistent with the constitutional provisions establishing this Court, which, of course, had in mind the declaration made by the people in our organic law that "every person shall have speedy remedy" in the Courts "for wrong sustained." Constitution, Art. 1, § 15.

The power given to a justice to issue a writ or order in the Court's original jurisdiction carries with it, necessarily, the right to make that writ returnable to the Court as a whole. Under the rule, authority is given to the justice to *act for the Court,* subject, of course, to the provision that the whole Court may decide later as to taking jurisdiction of the cause. We may say, since the question under consideration has been raised, that the procedure followed by Mr. Justice Stabler is one which has been pursued and approved in this Court for many, many years, without any objection so far as we are now informed. The rule of the Court authorizing a single justice to act for the Court is not only for the convenience of the members of the bar and the members of the Court, but it aids materially in the prompt administration of justice. Under our statutes, this Court is in regular session only nine times a year. Much

of the time the Court is not in open session, and, according-ly, writs in the original jurisdiction could not be obtained from the whole Court when it is proper for them to be is-sued. As a matter of fact, few writs are issued by the Court when in session; by far the greater number of them being issued by justices when the Court is not in session.

Whether or not a petition for a writ in the original ■■ jurisdiction of this Court meets the requirements of Rule 20 is for the determination, in the first instance, of the justice to whom the petition is presented. The Court, when it reviews the matter, or when it is called to our atten-tion in the proper manner, may finally conclude as to the merits of the showing made for the exercise of our original jurisdiction. We regard as having been properly raised, in this cause, the question as to whether or not the petition here comes within the rule. We think it does. The construc-tion, with a view to its enforcement, of an important stat-ute, one relating not only to the right of insurance com-panies to do business in this State, but one raising revenue, is involved. In all likelihood, many other insurance com-panies, as well as the respondents, are interested in an early determination of the questions presented. An official of the State is seeking to discharge properly the duties required of him under the laws, and to protect what he conceives to be the interests of the people of the commonwealth. The re-spondents sought not in the Courts of this State, but in the Federal Court, as they had every right to do, a construction of the involved statute, and the relief they felt themselves entitled to have. The Federal Court, following its usual procedure, one calculated to aid in the orderly administra-tion of justice, and to prevent a conflict between those Courts and the Courts of this State, awaited a decision of the cause in that Court, pending a construction of the stat-ute by the Courts of this State, for the reason that the Federal Courts look first for guidance in the construction of a State law to the highest Court of the State. Comity

between the Courts required this Court, and the justice thereof to whom the petition here was presented, to do all reasonable things to hasten a decision by this Court of the material questions relating to a construction of our legislative enactment. The stay granted by the Federal Court could be vacated upon proper proof that the suit in the State Courts was not being prosecuted with diligence and good faith, as will be seen by reference to the provisions of the Judicial Code of the United States hereinbefore cited. While the petition here did not say, in so many words, that "the public interests are involved," or that "special grounds of emergency or other good reasons existed" for the exercise of the original jurisdiction of this Court, still the facts stated in the petition were such as to show clearly, we think, that the public interests are involved, and that there are special grounds of emergency for this Court to take jurisdiction originally of the cause.

As indicated before, however, one of the purposes of Rule 20 of this Court is to prevent "an avalanche of cases," which should be instituted in the Circuit Court, from being brought in the original jurisdiction of this Court, and we may say for the benefit of the members of the bar that the Court, intends to exert its endeavors to faithfully follow that rule. Lately, the Court has granted many writs in the original jurisdiction, which, under the rule, should not have been granted, and the effect has been to delay the hearing of appeals which ought to have been heard, and this bad practice should not, and will not, be encouraged.

As to Subdivision (d), of the first ground of the demurrer, we regard the provisions of the Judicial Code of the United States, above referred to, as being entirely sufficient to answer the contention made. The action here brought is sanctioned by that section, in which there is contained a provision to the effect that, if a suit is brought to enforce the provisions of a questioned statute, in a State Court having jurisdiction, and in that suit a stay of

proceedings under the statute is granted, pending the determination of the suit by the State Court, then all proceedings in any Court of the United States to restrain the execution of the statute shall be stayed, pending the final determination of the suit in the State Courts.

All the other grounds of demurrer, without the necessity of a restatement of them, may be considered and disposed of together. As before stated, the bringing of this action is approved by the Federal Judicial Code. While one of the purposes of the action is to obtain from this Court a construction of the statute involved, that is by no means the only purpose. One of the main objects is to forbid, by way of the injunctive power of this Court, the doing of business in this State by the respondents, if they fail to comply with the laws of this State. It is true that, under the provisions of the last sentence of Section 7948 of the Code, the Attorney General might have brought a suit in the name of the State to collect the license fees alleged to be due by the respondents, and the insurance commissioner might have proceeded to revoke the licenses granted the respondents to do business in the State, both of which methods have been suggested by the respondents as showing that the petitioner has a full, adequate, and complete remedy at law. But we cannot agree with the respondents that either of the suggested remedies would be full, adequate, and complete. Pending the suit for collection of the fees, the respondents might still continue to do business in violation of our laws. Several suits might be necessary, as collections of premiums might continue during the pendency of the suits brought. A proceeding against the respondents by the commissioner to revoke their licenses could, and perhaps would, be restrained, and in fact the respondents have already sought to prevent such action on the part of the commissioner by injunctive process. The Court does have power to suspend the enforcement of a statute in a cause properly brought before the Court, when there is doubt as to the con-

stitutionality of the statute or the proper construction as to its language and terms. The Federal Judicial Code, mentioned before, recognizes the power of a State Court to suspend the enforcement of a statute properly attacked. The enforcement of the statute had to be suspended under those ·Code provisions. The petition shows on its face that the petitioner did not have a full, adequate, and complete remedy at law. In addition, the respondents themselves in this Court have asked for an injunction against the enforcement of the statute by the insurance commissioner, as he construes its meaning.

From what has been said, it follows that all the grounds of the demurrer must be, and are, overruled.

We now go back to the issues made by the return of the respondents. We take up first the question they raise as to certain provisions of Section 7946, Volume 3, of the Code, being in violation of "the due process clause" of the Constitution of the United States (Section 1, Amend. 14). Respondents assert, under the statutory provisions, the only method by which an order, ruling, or decision of the insurance commissioner can be reviewed is by way of *certiorari* or mandamus proceedings, before a Circuit Judge or justice of this Court, and that the enactment denies to them the right to appeal to the United States Courts. We have already held herein, in effect, that the method prescribed for review in Section 7946 is not exclusive, for, in this very case, this Court is undertaking to review the orders, rules, and decisions of the commissioner concerning a construction of the statutes under consideration. The statute itself does not say that the manner for review therein provided is exclusive. It gives an equal right to any and all persons, firms, and corporations, in any way affected by an order, ruling, or decision of the commissioner, to have a review before a Circuit Judge or justice of the Supreme Court. The purpose of this was to expedite a review in a Court of ·justice of any actions of the commissioner. In many in-

stances, not necessary now to be cited, this Court has reviewed actions of the insurance commissioner. We find nothing in the statute which says, either by direction or by implication, that an appeal to the Federal Courts, when proper to be taken, shall not be allowed. Any party interested in an adverse decision of a Circuit Judge, or justice of this Court, has the right to appeal from such decision to this Court, and, if a federal question is in any way involved, such party may, by proper procedure, have the decision of this Court reviewed by the Supreme Court of the United States. Therefore there is, and can be, no denial of any right the respondents have, at the proper time, to appeal to the Courts of the United States, if they desire to do so. In addition, we may say it does not appear to us that the question here presented has any bearing in this cause, for we do not see how the respondents are in any way now affected by the provision of the Code about which they complain. So far as the record here shows, no effort has been made to obtain a review of the orders and rulings of the commissioner, as to the payment of the license fees provided in the statute here involved, by any Circuit Judge or only one justice of this Court. The respondents sought a review in the Federal Courts; the commissioner, with the sanction of the Federal Court, seeks a review in this Court.

Finally, we proceed to the consideration of a construction of the provisions of Section 7949 of the Code. We quote the pertinent portions, so far as it is now necessary:

"The insurance commissioner of South Carolina is hereby authorized and directed to require all insurance companies doing business in this State * * * to pay, in addition to the annual license fee now provided by law, a graduated license fee in an amount equal to one (1%) per cent. on the total premiums collected in this State. * * *

"The one (1%) per cent. fee as provided for in the preceding paragraph shall be paid into the State Treasury for

State purposes, and the insurance commissioner of South Carolina is hereby required to collect said fee as other fees are collected and pay over to the State Treasurer.

"This section shall not be construed to in any way affect or reduce the annual license fees provided to be paid under existing laws, but is intended to provide for the payment of an additional fee and the proceeds to be derived from the collection thereof shall be used for State purposes."

Does the law permit credits and deductions for "return premiums" on the part of fire insurance companies, as contended for by the respondents?

The argument of respondents' counsel, to the effect that the taxation of the total premiums received, without allowing for the reduction of returned premiums, is unfair and unjust, is very strong. But that is a matter of legislative policy, and is not one to be determined by this Court. Plainly, we are bound by the law as it is written.

We think the decision of this Court in the recent case of *Jefferson Standard Life Insurance Company v. King, Insurance Commissioner*, 165 S. C., 219, 163 S. E., 653, 656, is conclusive against the position of the respondents in this regard. The Act of 1931 (now Section 7949 of the Code) was construed in that case with reference to the license fees to be paid, under its terms, by life insurance companies. The question presented, in effect, was this: Did the Act permit life insurance companies, in making payment of the required fees on "total premiums" collected by them, to take credit for dividends or bonuses paid in cash or applied in abatement of premiums? The answer of the Court was in the negative. Mr. Justice Stabler, who wrote the opinion, admitted that the authorities were conflicting as to the meaning of the language contained in Section 7949 (Act of 1931), if the wording of the statute was alone to be considered; and that some Courts had held that "total premiums" meant the allowance of credit for returned premiums, while others had taken the opposite view. The conclusion of this Court

was rested, in the main, upon a comparison of the language in Section 7949 with that contained in Section 7948 of the 1932 Code then (Section 4067, Vol. 3, Code of 1922). The last-mentioned statute was in existence at the time of the adoption of the law contained in Section 7949. The enactments are similar in many respects, and the purpose of both of them was to require the payment of license fees for the transaction of business in this State by various companies, including those engaged in the business of life and fire insurance. In Section 7948 there was provided for the payment of a license fee of 2 per cent. to be computed on the "total premiums" collected, "less any dividend or bonuses paid in cash or applied in abatement of premiums." It was clear, therefore, that the General Assembly intended in that enactment to allow credit by life insurance companies of the dividends and bonuses therein specified. But in the Act of 1931 (now Section 7949), the language quoted from Section 7948 was not inserted, and the failure so to do was deemed by this Court as "the clear intention of the Legislature not to allow, in the collection of the additional license fee imposed by the Act of 1931, the deductions provided for in Section 4067 [now Section 7948] of the Code."

The law, as contained in Section 7948 providing for the payment of an annual license fee by fire insurance companies doing business in this State, said that the fee therein required, two per cent., was to be paid on the total premiums, "i. e., total income or total receipts from the State, *less return premiums* for cancellation on risks in this State during the time the company has done business in this State since last such return." (Italics ours.) The language quoted from that law was not inserted by the General Assembly in Section 7949. Following the *Jefferson Standard Life Insurance Company case,* the reasoning of which is entirely satisfactory, it is clear that the Legislature did not intend in the law last made to allow, in the computation of "total premiums," the reduction of "returned premiums" for cancellation on risks.

As to the matter of deductions from the "total premiums" on account of reinsurance. That the position maintained by the respondents concerning that may be clearly understood, we quote this statement from the argument of their counsel: "By agreement previously entered into, or made simultaneously with the execution of the contract, or even subsequently to the execution of the contract, an agreed portion of the risk, described in and covered by the one policy contract, is taken over, or assumed, by one or more other companies. The insured is not a party to this agreement. It is consummated without his knowledge, and without the knowledge even of the local agent countersigning and delivering the policy. Hence, it will be seen that such an agreement—familiarly recognized in the insurance world as a contract of reinsurance—is consummated, not at the situs where the original policy contract is entered into between the insured and the agent representing the insurer, but at the place of business, or home office of the first insurer."

We gather from the argument, as well as from matters set forth in the return, that the "contract of reinsurance" is made sometimes, and perhaps all the time, beyond the limits of this State.

We understand the position of the insurance commissioner in this connection to be this: That fire insurance companies, doing business in this State, must pay on the "total premiums" collected by them in this State, and that from such "total premiums" they are not allowed to deduct the cost of reinsurance of property covered by their policies issued in this State, even if the contract for reinsurance is made beyond the limits of the State, and the money paid for such reinsurance is paid beyond the State.

We find nothing in the Act under consideration, or in the provisions of Section 7948, as to any allowance for "reinsurance." If premiums collected by fire insurance companies in this State are used, in whole or in part, by them to pay for reinsurance, we are unable to find any expression in the

language of the law which permits the cost of such reinsurance to be deducted in computing the license fees to be paid, regardless of where the contract for reinsurance was made, or to what state the money is sent. And we cannot agree with the view of the respondents that such reduction should be allowed, even as a matter of policy. If an allowance of that character should be permitted, it would be an easy thing for insurance companies, if they were disposed to do so, to evade the payment of a great part, if not all, of the fees due to the State on the premiums collected by them, for a company might easily arrange to reinsure all property insured by it in this State.

The purpose of the law is clearly not to require a tax on business done beyond the limits of the State. The tax is on "total premiums" collected in this State. That means, of course, premiums received for insurance carried by the companies on property in this State. The companies are not required to reinsure. They do not have to accept risks which they are to reinsure. The cost of reinsurance is an expense to the company, but there is nothing in the law which allows a reduction for such expense. That particular class of expense, like many other expenses of the company, is one to be borne by it, if it chooses to incur it. The matter is so clear to us that we think there is no need to further discuss it, and the construction placed upon the language of the Act by the Commissioner must be sustained.

The judgment of this Court is: First, that the demurrer interposed by the respondents be, and the same is hereby, overruled; second, that the provisions of Section 7949 of the Code are construed as herein indicated, and that the license fees required of the respondents by the petitioner thereunder are lawful and due, and that the petitioner be authorized to proceed to the collection thereof; third, that the petitioner have the right to apply to this Court hereafter for the issuance of such order, or orders, writ, or writs, as may be necessary to carry into effect the conclusions and judg-

ment of this Court, and upon his application therefor, at the proper time, that the order restraining the petitioner from proceeding to enforce the acts of the General Assembly, referred to in this cause, be dissolved.

MESSRS. JUSTICES STABLER, CARTER and BONHAM, and MR. W. C. COTHRAN, ACTING ASSOCIATE JUSTICE, concur.