222 S.C. 266 (1952)
72 S.E.2d 438
STATE EX REL. PUBLIC SERVICE COMMISSION ET AL.
v.
ATLANTIC COAST LINE R. CO. ET AL.
16667
Supreme Court of South Carolina.
September 5, 1952.
*267 Messrs. Charles Clark, of Washington, D.C., Earl E. Eisenhart, Jr., of Washington, D.C., Frank G. Tompkins, Jr., of Columbia, and John Gregg McMaster, Jr., of Columbia, *268 for Appellant, Southern Railway Company.
Messrs. Douglas McKay, of Columbia, Wm. P. Baskin, of Bishopville, C.C. Howell, of Wilmington, N.C., and *269 R.B. Gwathmey, of Wilmington, N.C., for Appellant, Atlantic Coast Line Railway Company.
*270 Messrs. Charles Clark, of Washington, D.C., Earl E. Eisenhart, Jr., of Washington, D.C., Frank G. Tompkins, Jr., of Columbia, and John Gregg McMaster, Jr., of Columbia, for appellant, Southern Railway Company.
The Order of Judge Martin follows:
On November 20, 1950, the members of the Public Service Commission of South Carolina and others, including the Attorney General, as Relators, filed a petition in this Court under Section 8341 of the Code of Laws 1942, praying for the issuance of a writ of mandamus to require compliance by the respondents, Atlantic Coast Line Railroad Company and Southern Railway Company, with an order of the Commission dated June 14, 1950, which provided:
*271 "This matter being before the Commission upon complaint and answer, and having been duly heard, and the Commission having, on the date hereof, made and filed a report containing its findings of fact and conclusion thereon, which report is hereby referred to and made a part hereof;
"It is Ordered, That the Atlantic Coast Line Railroad Company and the Southern Railway Company be, and they hereby are, directed and required to forthwith rebuild their passenger station building in the City of Charleston, South Carolina, on the site of the station building which burned on January 10, 1947, and thereafter to inaugurate passenger train service thereto and therefrom.
"It is Further Ordered, That the companies shall make monthly reports to this Commission as to the progress made in compliance with this order, and that the said Union Station shall be completed within twelve months from the date hereof, unless otherwise ordered by the Commission."
The petition alleged that the respondents have not complied with the Commission's order, and that instead of filing the monthly reports required therein and entering upon compliance therewith they each commenced a separate action in the District Court of the United States for the Eastern District of South Carolina seeking injunctions, both interlocutory and permanent, to prevent the enforcement of the order as being null, void, and of no effect, and praying that a special court of three judges be organized to hear and determine the causes.
After citing the provisions of Section 8341, providing for the enforcement of the regulations prescribed by the Commissioners "within the limits of their authority" in reference to railroad companies, and also the provisions of Title 28 U.S.C.A., Judiciary and Judicial Procedure, § 2284, of the laws of the United States, to the effect that a district court of three judges, "shall, before final hearing, stay any action pending therein to enjoin, suspend or restrain the enforcement * * * of a State statute or order thereunder, *272 whenever it appears that a State court of competent jurisdiction has stayed proceedings under such statute or order pending the determination in such State court of an action to enforce the same," the petition prayed for a writ of mandamus to require compliance by the respondents with the Commission's order, and that its enforcement be stayed and restrained pending the determination of this proceeding.
Upon the filing of the petition, the Court issued an order requiring the respondents to show cause why the writ prayed for should not be issued, and included therein a provision that, pending the determination of this proceeding for a writ of mandamus, and for a like period after the expiration of the twelve months completion period prescribed in the Commission's order, the enforcement of the same by the relators and by any other officer or person upon whom a copy of the rule is served or who may have knowledge of the same is stayed and restrained.
The District Court of three judges thereupon by appropriate orders stayed the actions brought by the respondents in the District Court, in conformity with 28 U.S.C.A., § 2284, supra. Cf. Traffic Telephone Workers' Federation of N.J. v. Driscoll, D.C., 72 F. Supp. 499, appeal dismissed, 332 U.S. 833, 68 S.Ct. 221, 92 L.Ed. 406.
The respondents filed separate returns to the order to show cause, certain factual allegations of which were traversed by the relators, and the matter was heard in the December 1950 term of the Court of Common Pleas for Charleston County on the petition, the returns, the traverses thereto, the pleadings, evidence and exhibits before the Public Service Commission, and additional evidence offered by the parties by way of affidavits.
The petition alleges and the record shows that for approximately forty years, until January 10, 1947, the respondents afforded passenger station facilities to the public at Columbus and Bay Streets in the City of Charleston through the Charleston Union Station Company as their jointly owned *273 agency and instrumentality; that on January 10, 1947, all of that part of the main Union Station building devoted to the accommodation of passengers, the sale of tickets, and the handling of baggage was destroyed by fire; that thereafter negotiations were had between the respondents and the authorities of the City of Charleston looking to the re-establishment of suitable passenger station facilities for the city and its residents and the travelling public generally; that these negotiations failed to result in any kind of an agreement, whereupon the city filed a complaint with the Public Service Commission on August 15, 1949, to require the respondents "to provide within the City of Charleston a suitable union station or separate suitable passenger depots * * *"; that upon due notice such complaint was heard by the Commission on December 13, 1949, and on January 20, 1950, and evidence on behalf of the city and of the respondents was duly given and received; and that thereafter the Commission issued the order which is sought to be enforced in this proceeding.
The record discloses that the Charleston Union Station Company was created by Act No. 625 of the Acts of 1902; 23 Stat. 1168; Riley v. Charleston Union Station Company, 67 S.C. 84, 45 S.E. 149; id., 71 S.C. 457, 51 S.E. 485, 110 Am. St. Rep. 597, "for the purpose of constructing, maintaining and operating a Union Passenger Station in the City of Charleston, South Carolina, and to that end to acquire by purchase, lease, condemnation as hereinafter provided, or otherwise, any and all property that may be necessary for the construction, maintenance and operation thereof in said city, and by such name to have all the general powers, and be subject to all the general restrictions, given and imposed by the laws of this State upon railroad corporations."
The tracks of the Atlantic Coast Line connected with the trackage of the Union Station, and the Southern was given access to the station for its trains over the double line track of the Atlantic Coast Line by means of a trackage agreement *274 between the respondents dated January 1, 1907, and a supplemental agreement including additional trackage dated March 8, 1916. This agreement recited that each respondent was operating a railroad entering the City of Charleston, and that they had organized in their joint interest the Charleston Union Station Company for the purpose of constructing and operating a passenger terminal and union station in the City of Charleston to be used in common by both.
By an instrument dated September 29, 1947, the respondents cancelled as of January 25, 1947, the trackage agreement of January 1, 1907, and the agreement supplemental thereto, reciting that the Union Station was partially destroyed by fire, rendering it untenable by the respondents for the conduct of their passenger business, and that the joint use by the Southern of the Atlantic Coast Line trackage in connection with the joint use of said passenger station is no longer necessary or required by it.
The Charleston Union Station Company received $158,366.00 from insurance sources in settlement of losses sustained in the fire, which, however, has not been used to replace the portion of the station building which burned. Instead, the respondents entered into the negotiations with the city mentioned above, and in the meantime the Atlantic Coast Line passenger trains formerly using the Union Station have used the Company's North Station, about seven miles outside the city, with bus connections to the City Market in the center of the city, while the Southern trains have used old passenger cars at Line Street in the city as a temporary station.
The Atlantic Coast Line proposed to develop its North Station further and use it as its passenger station for Charleston, while the Southern proposed to provide a station for its passenger purposes on Ann Street in the city. These proposals were rejected by the city authorities in the negotiations between the parties.
*275 The respondents have challenged the Commission's authority to make the order in question.
Under Section 8415 of the Code of Laws, 1942, and Rule No. 45 promulgated by the Commission thereunder, it is given authority to require all railroads to erect union or other depots at junctional points and such other points as the travel and public interest in their judgment shall justify.
Under Section 8292-12 of the Code of Laws, the Commission has the general supervision of all railroads and railways in the State, with the duty of enforcing compliance by them with the provisions of their charters and the laws of the State.
Rule No. 14 of the Commission, promulgated under Section 8292-12, supra, and filed in the Secretary of State's office June 30, 1937, provides:
"Each and every depot, flag stop, station, office and agency, now maintained, conducted or used in South Carolina by any railroad * * * doing business in this State, for the transaction of business with the public is hereby formally established and located at the point and on the premises where the same is now being so maintained and conducted.
No such depot, flag stop, station, office or agency, as aforesaid, now established, or that hereafter may be established, pursuant to orders made by the Commission, or voluntarily by such company, or otherwise, shall be closed, removed, suspended, discontinued or abolished without authority granted by the Public Service Commission. * * *"
In Western & Atlantic Railroad v. Georgia Public Service Commission, 267 U.S. 493, 496, 45 S.Ct. 409, 410, 69 L. Ed. 753, with reference to the application of a similar rule to switching service on an industrial siding, the court observed:
"The service has been rendered for years. It was a voluntary arrangement, and under its statutory powers (section 2664, Georgia Civil Code 1910) was made irrevocable by the Public Service Commission under rule 14, except by *276 consent of the commission. The spur track was for a public purpose. Union Lime Co. v. C[hicago] & N.W. Ry. Co., 233 U.S. 211, 34 S.Ct. 522, 58 L.Ed. 924. The requirement that such a service should not be discontinued without notice and hearing was clearly within the police power of the state. Chicago & Northwestern R.R. Co. v. Ochs, 249 U.S. 416, 39 S.Ct. 343, 63 L.Ed. 679; Lake Erie & Western R.R. Co., v. State [Public Utilities Commission of Ill.] ex rel. Cameron, 249 U.S. 422, 39 S.Ct. 345, 63 L.Ed. 684; Railroad Commission v. L[ouisville] & N.R.R. Co., 148 Ga. 442, 96 S.E. 855."
The proceeding before the Commission was not one to require the original establishment of a union station by the respondents, with the attendant abandonment of existing separate stations, the relocation of tracks, and the extension of lines, which, under Railroad Commission of State of California v. Southern Pacific Co., 264 U.S. 331, 348, 44 S. Ct. 376, 68 L.Ed. 713, would require a certificate from the Interstate Commerce Commission. Atchison, T. & S.F. Ry. Co. v. Railroad Commission, 283 U.S. 380, 387, 51 S.Ct. 553, 75 L.Ed. 1128.
The respondents contend nevertheless that the Commission is without power to order the restoration of the Union Station, because the Southern now has no access to the station site, and would have to extend its lines thereto to comply with the order or enter into a new trackage agreement with the Atlantic Coast Line, for either of which it would have to obtain a certificate from the Interstate Commerce Commission.
The Union Station which the Commission ordered the respondents to restore was established by their joint action more than forty years before the fire, with the trackage agreement as an integral part of the arrangement under which it was established and maintained, and it was used by them during that period of time to afford passenger facilities to the public at Charleston, in performance of their respective franchise duties and functions in that regard.
*277 Neither respondent has sought or obtained any authority from the regulatory commissions to discontinue the Union Station, to cancel the trackage agreement, or to abandon the operation to and from the station of the trains now in service which operated to and from it before the fire. They merely procured informal acquiescence for the time being in the temporary or emergency arrangements as to passenger facilities which they made after the fire.
The respondents could not lawfully discontinue the station without the Public Service Commission's authority, under Rule 14, supra, and the rule prohibited as well any action on their part without like authority which would bring about or necessarily result in discontinuance of the station, or would prevent the Commission from enforcing its continued operation. The trackage agreement was a necessary incident to the maintenance and operation of the Union Station as established by the respondents, and their attempted cancellation without the authority of the Commission under Rule 14 was invalid. Cf. Thompson v. Texas Mexican Ry. Co., 328 U.S. 134, 146, 147, 66 S.Ct. 937, 90 L.Ed. 1132.
Under the statutes, rules and authorities above referred to, the order sought to be enforced was within the limits of the authority of the Public Service Commission.
The respondents also challenged the validity of the order as being arbitrary and unreasonable, amounting to a denial of due process of law and equal protection under the applicable constitutional provisions, and as casting an undue burden on interstate commerce, because of the expenditures required of them to comply with the order and the losses which they say will result from the operation and use of the Union Station.
They introduced evidence to the effect that the Union Station's operations have in the past resulted in substantial annual deficits; that they can operate separate stations as proposed by them with less losses; that the Southern could reduce *278 its operating costs by making up its trains on its own tracks instead of having to bring its engines to Union Station to pick up its trains; that there is little interchange of passengers between their lines at Charleston; and that there has been a sharp reduction in passenger traffic into and out of Charleston since the fire, in consequence of which they were each authorized by the Public Service Commission in July, 1950, to discontinue their only intrastate trains which formerly used the station.
No evidence was offered before the Commission as to the construction cost of restoring the station, but at the hearing in this Court the respondents introduced evidence to the effect that reproduction of the burned building would entail an expenditure of approximately $400,000, while the relators offered evidence tending to show that, eliminating waste space in the old building and dispensing with the second story which was not used in relation to passenger service, a suitable passenger station can be constructed for something less than the insurance money received by the Charleston Union Station Company from the fire.
There is no showing that the operating loss incident to the Charleston Union Station compares unfavorably with that at comparable stations at other points, nor is it shown that there was ever any great interchange of passengers between the lines of the respondents at Charleston. The Commission concluded on conflicting evidence that the reestablishment of the Union Station is justified in the public interest, and that the lack of a union station tends to discourage passenger traffic, a conclusion finding support in the sharp decrease in passenger traffic since the operation of the station was interrupted by the fire, with the attendant inconvenience to the travelling public, resulting in the discontinuance of the intrastate trains of the respondents. The Commission also found that the North Station of the Atlantic Coast Line, with bus connections to the City Market, does not constitute a satisfactory performance of that company's duty to render passenger station facilities in the City of *279 Charleston, and that the Southern's passenger facilities are wholly inadequate.
The Commission's order may not reasonably be construed to contemplate exact duplication in detail of the 1907 station structure. The Commission was dealing with passenger facilities, and the evidence shows that a suitable station for that purpose of modern design and construction can be provided on the site of the burned station for not in excess of the amount of insurance received on account of the fire damage. The order does not require the perpetuation of waste space, antiquated architecture, and features not essential to proper passenger service.
The record shows that the location of the proposed Southern station would result in the operation of passenger trains through the center of a large part of the city, with increased disruption of traffic and an increase in the crossing accident potential, and the Commission was entitled to consider the convenience to the travelling public of a single station for the passenger trains of either railroad, as against separate stations.
When the respondents originally established the Union Station at Columbus and Bay Streets in the City of Charleston, they determined the question of public convenience and necessity therefor to their own satisfaction. They now assert the right to discontinue the station, and to abandon passenger train service thereto and therefrom, and they have the burden of showing that public convenience and necessity therefor no longer exists.
The order of the Commission is presumptively just and reasonable, and its findings of fact are prima facie correct, Southern Ry. Co. v. Public Service Commission, 195 S.C. 247, 10 S.E. (2d) 769, 773, 774.
It is well settled that the State, directly or through an authorized commission, may require railroad companies to provide reasonably adequate and suitable facilities for the convenience of the communities served *280 by them, and that railroads may be compelled by State legislation to establish stations at proper places for the convenience of their patrons, including union stations. The power to regulate is not unlimited, and the question in each case is whether, in the light of the facts disclosed, the regulation is essentially an unreasonable one, with the matter of expense an important criteria to be taken into view in determining the reasonableness of the order. Atchison, T. & S.F. Ry. Co. v. Railroad Commission, supra, at pages 394-396 of 283 U.S., 51 S.Ct. 553.
But the fact that the operation of the station will entail losses is not conclusive of the question. Western & Atlantic Railroad v. Georgia Public Service Commission, supra; Southern Ry. Co. v. Public Service Commission, supra; Fort Smith Light & Traction Co. v. Bourland, 267 U.S. 330, 45 S.Ct. 249, 69 L.Ed. 631; Southern Ry. Co. v. South Carolina Public Service Commission, D.C., 31 F. Supp. 707.
In Fort Smith Light & Traction Co. v. Bourland, supra, the order under consideration in effect required the company to continue operating a part of one of its lines, although it was unremunerative and had to be practically rebuilt at great expense to conform to a change of street grade. It was contended that the order deprived the company of its property without due process of law under the Fourteenth Amendment. The Court held, at page 332 of 267 U.S., at page 249 of 45 S.Ct.:
"The Greenwood avenue line had been in operation nearly 20 years. No change in conditions had supervened which required the commission to permit the abandonment, unless it were the fact that this particular part of the system was being operated at a loss; that continued operation would involve practical rebuilding of that part of the line; that such rebuilding would entail a large expenditure; and that the system as a whole was not earning a fair return upon the value of the property used and useful in the business. The order complained of does not deal with rates. Nor does it *281 involve the question of the reasonableness of service over a particular line. Compare Atlantic Coast Line R.R. Co. v. Corporation Commission, 206 U.S. 1, 23-27, 27 S.Ct. 585, 51 L.Ed. 933; Railroad Commission v. Mobile & Ohio R.R. Co., 244 U.S. 388, 37 S.Ct. 602, 61 L.Ed. 1216. It merely requires continued operation. We cannot say that it is inherently arbitrary. A public utility cannot because of loss, escape obligations voluntarily assumed. Milwaukee Electric Ry. Co. v. Milwaukee, 252 U.S. 100, 105, 40 S. Ct. 306, 64 L.Ed. 476. The fact that the company must make a large expenditure in relaying its tracks does not render the order void. Nor does the expected deficit from operation affect its validity. A railway may be compelled to continue the service of a branch or part of a line, although the operation involves a loss. Missouri Pacific Ry. Co. v. Kansas, 216 U.S. 262, 279, 30 S.Ct. 330, 54 L.Ed. 472; Chesapeake & Ohio Ry. Co. v. Public service Commission, 242 U.S. 603, 607, 37 S.Ct. 234, 61 L.Ed. 520. Compare Railroad Commission v. Eastern Texas R.R. Co., 264 U. S. 79, 85, 44 S.Ct. 247, 68 L.Ed. 569. This is true even where the system as a whole fails to earn a fair return upon the value of the property. So far as appears, this company is at liberty to surrender its franchise and discontinue operations throughout the city. It cannot in the absence of contract, be compelled to continue to operate its system at a loss. Brooks-Scanlon Co. v. Railroad Commission of Louisiana, 251 U.S. 396, 40 S.Ct. 183, 64 L.Ed. 323. But the Constitution does not confer upon the company the right to continue to enjoy the franchise [for indeterminate permit] and escape from the burdens incident to its use."
In Western & Atlantic Railroad v. Georgia Public Service Commission, supra, at page 496 of 267 U.S., at page 410 of 45 S.Ct., the court held:
"It is said that the requirement of the continuance of the service deprived the company of its property without due process of law, in violation of the Fourteenth Amendment, because the service rendered by the side track was much *282 greater in out-of-pocket cost than the compensation. This cannot be sustained. * * * Even if the cost of the switching is more than what is received for it, we cannot determine on any showing made by the company that the switching does not work a benefit in the increased business that the company gets or may get by reason of the added facilities furnished by the switching. The switch is a small part of the whole railway, and the mere fact that the switching may not be profitable by itself cannot be held to be a confiscation of property, even if it involves a loss."
The respondents have franchises which include the duty of furnishing adequate passenger service and facilities, and they may not continue to enjoy their franchises and escape from the burdens of their use. State ex rel. Daniel v. Broad River Power Co., 157 S.C. 1, 153 S.E. 537; Harmon v. Columbia & G. Railroad Co., 28 S.C. 401, 5 S.E. 835. The mere fact that the station operation and the incidental train dispositions may not be profitable by themselves does not constitute a confiscation of the property of the respondents, even if involving a loss, for the evidence fails to show that they are not necessary to afford suitable passenger service in the City of Charleston. The Commission's order finds full support in the evidence, and was not arbitrary and unreasonable.
The contention of the respondents that the order required the Atlantic Coast Line to bring into the Union station after its restoration its interstate trains not using the station prior to the fire is not tenable. The inauguration of train service to and from the restored union station clearly has reference to the trains now in service which used the station at the time of the fire, authority to discontinue the operation of which to the station has not been sought or obtained. What additional amount of train service may be required to use the station after its restoration will depend upon action of the regulatory commissions upon a showing of the necessity for more passenger train service at that point.
*283 The contention that the expenditures required of the respondents by the order and the loss which they claim will result from the use of the union station will constitute an undue burden on interstate commerce has not been made out by the respondents. They owe passenger service and facilities under their franchises and they have not shown an over-all loss from the exercise of their franchise rights in Charleston or in South Carolina.
The protection of interstate commerce from undue burdens resulting from franchise requirements and state regulation has been entrusted by the Congress to the Interstate Commerce Commission, and not to the courts, Southern Ry. Co. v. South Carolina Public Service Commission, supra, at pages 715 and 716 of 31 F. Supp., and in such cases as that here presented the serious injury to which the community may be subjected by abandonment is to be weighed against the burden "upon a prosperous carrier." Cf. Colorado v. United States, 271 U.S. 153, 168, 169, 46 S.Ct. 452, 456, 70 L.Ed. 878.
The order in question requires the continuance in the City of Charleston of the union passenger station service which was provided by the respondents for approximately forty years until it was interrupted by the fire. The respondents have not sought or obtained lawful authority to discontinue and abandon the station or train operations therefrom and thereto. The order was within the statutory authority of the Public Service Commission, and it has not been shown to be arbitrary and unreasonable under the evidence.
It is Therefore Ordered, That the writ of mandamus prayed for do issue, and the respondents Atlantic Coast Line Railroad Company and Southern Railway Company are hereby commanded and enjoined forthwith to comply with the provisions of Order No. 7271 of the Public Service Commission of South Carolina, dated June 14, 1950, upon the expiration of the period during which the enforcement of the said Order was stayed and restrained in and by the order of this Court dated November 20, 1950.
*284 September 5, 1952.
PER CURIAM.
The judgment of the Court of Common Pleas in this proceeding, dated February 10, 1951, has been carefully considered in the light of the exceptions and briefs of appellants. It is found to be free from error and is adopted, and will be published, as the opinion of this Court. It correctly disposes of all of the issues presented by the appeal, with full discussion of all of them except the point that before the action was brought the present respondents petitioned this Court to assume original jurisdiction of a similar action, which we declined to do. It was simply a refusal to take original jurisdiction of the controversy and was without prejudice to the plaintiffs to proceed in the Court of Common Pleas, as they did. Rule 20, § 1. Cf. King v. Aetna Ins. Co., 168 S.C. 84, 167 S.E. 12. The exceptions are overruled and the judgment affirmed.