283 U.S. 380 (1931)
ATCHISON, TOPEKA & SANTA FE RAILWAY CO.
v.
RAILROAD COMMISSION OF CALIFORNIA ET AL.
LOS ANGELES & SALT LAKE RAILROAD CO.
v.
SAME.
SOUTHERN PACIFIC CO. ET AL.
v.
SAME.
Nos. 470, 471, 472.
Supreme Court of United States.
Argued April 23, 24, 1931.
Decided May 18, 1931.
APPEALS FROM THE SUPREME COURT OF CALIFORNIA.
*381 Mr. C.W. Durbrow, with whom Messrs. Robert Brenan, E.W. Camp, A.S. Halsted, Frank Karr, and Guy V. Shoup were on the brief, for appellants.
Mr. Arthur T. George, with whom Messrs. Ira H. Rowell and Roderick B. Cassidy were on the brief, for appellees.
Messrs. Erwin P. Werner, Milton Bryan, Max Thelen, Jess E. Stephens, and Edwin C. Blanchard, by special leave of Court, filed a brief as amici curiae.
*386 Mr. CHIEF JUSTICE HUGHES delivered the opinion of the Court.
These are appeals from judgments of the Supreme Court of California, which affirmed an order of the Railroad Commission of that State requiring the appellants to construct a union passenger station in the City of Los Angeles, together with incidental connections, extensions, improvements and terminal facilities, in substantial compliance with the plan outlined by the Commission. 209 Cal. 460; 288 Pac. 775.
Proceedings were begun before the State Railroad Commission in the year 1916, and in December, 1921, after two hearings, the Railway Companies were required to remove certain grade crossings and to build a union terminal within a defined area known as the Plaza site in Los Angeles. 19 Op. R.R. Com. Cal. 740; 20 id. 937. The Supreme Court of the State held that the order was beyond the power of the Commission, because the subject matter had been committed to the Interstate Commerce Commission by the Transportation Act of 1920. 190 Cal. 214; 211 *387 Pac. 460. The judgment was affirmed by this Court. 264 U.S. 331. The Court held that the relocation of tracks, which was incidental to the proposed union station, required a certificate of approval of the Interstate Commerce Commission under paragraphs 18 to 21 of § 1 of the Interstate Commerce Act, as amended by the Transportation Act of 1920 (41 Stat. 476-478), as a condition precedent to the validity of any action by the carriers or of any order by the State Railroad Commission.[1]
Pending the consideration of that case, a proceeding was instituted before the Interstate Commerce Commission by the City of Los Angeles to obtain an order requiring the three Railway Companies to build the union station at the designated place. That Commission decided, July 6, 1925 (100 I.C.C. 421), that it was without authority to require the construction of the station. But, in order to facilitate the disposition of the case, the Commission made certain hypothetical certificates substantially as follows:[2]
"(1) That the public convenience and necessity require the extensions of lines that may be necessary to reach and serve any union passenger station within the plaza which may be constructed in accordance with a lawful order of the State Commission and that may be necessary to provide for the incidental rearrangement of passenger and freight routes, and that the expense involved will not impair the carriers' ability to perform their duties to the public. (2) That public convenience and necessity permit the abandonment of train service on Alameda Street and such other abandonments of lines as would be necessary in connection with the establishment of any such *388 station, so lawfully ordered by the State Commission. The report further found that such joint use of track or other terminal facilities as may be incidental and necessary to the proper operation of any such union station is in the public interest and is practicable, without substantially impairing the owning carriers' ability to handle their own business."
In reaching its conclusion, the Interstate Commerce Commission made an extended review of the question of the expense involved, stating that "if a union station were built at the Plaza under substantially the plan presented by the California Commission, the new money necessary to be raised, less the value of property released from passenger service, would be about $5,500,000. The total investment in passenger facilities under the Plaza plan would approximate $9,500,000." 100 I.C.C., p. 457.
After setting forth its findings upon the record before it, the Commission reserved jurisdiction for the purpose of making such further findings and orders, and issuing such certificates, as should be warranted in the event that the plan of the State Commission as finally evolved should be materially different from that "as here considered to be in the public interest." Id., p. 461.
Following this action of the Interstate Commerce Commission, the proceeding before the State Commission was reopened. The action of the Federal Commission was submitted, hearings were had at which evidence was received, and, on July 8, 1927, the State Commission made the order, which was the subject of the judgments now under review, requiring the building of the station within the Plaza area and the establishment of the connections, additions and facilities which that project involved. The State Commission found that "the present and future public convenience and necessity" required the construction of the union station, and that it could be constructed at a cost of approximately $10,000,000 in substantial compliance *389 with the plan outlined, which was found to be in all essential respects similar to that considered by the Interstate Commerce Commission in its order above mentioned. 30 Op. R.R. Com. Cal. 151.
Petitions for final order were then presented by the City of Los Angeles and the State Commission to the Interstate Commerce Commission. After further hearing the latter Commission made its report, on May 8, 1928, adhering to the conclusions of its former report that "public convenience and necessity" required the extension by the Railway Companies of their respective main lines in the City of Los Angeles "so as to reach and serve a union passenger station and terminal which they may construct in the Plaza district," pursuant to order of the State Commission to that effect, with "the abandonment of other portions of main lines to provide for incidental rearrangement of routes, and the abandonment of train service on Alameda Street," and that "such joint use is in the public interest and practicable, without impairing the ability of the carrier or carriers owning or entitled to the enjoyment of such track or tracks to handle its or their own business." The Interstate Commerce Commission issued its certificate accordingly, but the petition for the issue of an order requiring the Railway Companies to construct a union station was denied. 142 I.C.C. 489.
Application was then made to the Supreme Court of the District of Columbia for a writ of mandamus to compel the Interstate Commerce Commission to consider the evidence introduced before it for the purpose of determining whether the Commission should order the Railway Companies to build the union station, and, after consideration of the evidence, to make such an order as the facts required. Dismissal of that petition was reversed by the Court of Appeals of the District of Columbia, and, upon writ of certiorari, this Court reversed the judgment of the Court of Appeals. This Court held that the Congress *390 had not conferred upon the Interstate Commerce Commission authority to require the building of the station. 280 U.S. 52.
Referring to its former decision, the Court said (id., p. 71): "The only issue there presented to this Court, was whether it was necessary to secure from the Interstate Commerce Commission its approval of the construction of a union station and the relocation of the connecting tracks proposed. The point in that case was the necessity for the acquiescence by the Interstate Commerce Commission in respect to a union passenger station. We held such a certificate to be necessary before a union station or connecting lines of interstate carriers could be lawful. That is all we held."
Thereupon, the Railway Companies petitioned the Supreme Court of the State to review the order of the State Commission requiring the construction of the station, and that court entered the judgments of affirmance from which these appeals have been taken.
The questions presented are solely those of constitutional authority. All questions of fact as to public convenience and necessity, and as to the practicability of the proposed plan, have been resolved against the Railway Companies by the proper tribunals. This Court has held that the State Commission could not require the construction of the proposed station, and the relocation of connecting tracks, without the approval of the Interstate Commerce Commission. That approval has been given. This Court has also decided that the Interstate Commerce Commission has not been empowered to require the building of the station. That Commission has not attempted to exercise any such authority. The question now is as to the authority of the State Commission, in view of the action of the Federal Commission, to require the construction of the station with the incidental arrangement of tracks and facilities. The decision of the state court *391 is conclusive so far as the constitution and laws of the State are concerned. The State Commission has acted within the power conferred upon it. The only questions before us are those arising under the Federal Constitution and the Interstate Commerce Act.
First. The Railway Companies contend that the order of the State Commission is repugnant to the commerce clause and is in conflict with the powers vested by the Congress in the Interstate Commerce Commission. The argument is that as to union terminal facilities, joint use of tracks and abandonment of lines, the Congress has occupied the field and that state authority has been abrogated. Northern Pacific Ry. Co. v. Washington, 222 U.S. 370; Pennsylvania R. Co. v. Public Service Commission, 250 U.S. 566; Colorado v. United States, 271 U.S. 153; Alabama & Vicksburg Ry. Co. v. Jackson & Eastern Ry. Co., 271 U.S. 244; Missouri Pacific R. Co. v. Porter, 273 U.S. 341. The contention presupposes that state authority could be exerted were it not for the provisions of the federal legislation. That is, that it was the intention of Congress to prevent the exercise of state power in this matter of serious public interest, although no authority was given to the Federal Commission to meet the public need. Such an intention to override existing state authority to deal with local exigencies is not to be imputed to the Congress unless its enactment compels that conclusion. In deciding that the Congress had given to the Interstate Commerce Commission no power to require the building of such a union terminal as that projected in this case, this Court adverted to the extent of the authority that would be involved and the effect of its exercise upon local interests. The Court said (280 U.S. pp. 68, 69):
"Such authority, if conferred in Los Angeles, would have application to all interstate railroad junctions, including the numerous large cities of the country, with their *392 residential, commercial, shopping, and municipal centers now fixed and established with relation to existing terminals. It would become a statute of the widest effect and would enter into the welfare of every part of the country. Various interests would be vitally affected by the substitution of a union station for the present terminals. A selection of its site from the standpoint of a city might greatly affect property values and likewise local transportation systems. The exercise of such power would compel the carriers to abandon existing terminals, to acquire new land and rights of way and enter upon new construction, to abandon large tracts and to sell territory of the same extent as no longer necessary for the use of the carriers.
"There would have to be tribunals to apportion the expenditures and cost as between the carriers. A proper statute would seem to require detailed directions, and we should expect the intention to be manifested in plain terms and not to have been left to be implied from varied regulatory provisions of uncertain scope. It would be a monumental work and one requiring the most extensive exercise of expert engineering and railroad construction. It would make possible great changes of much importance in the plans of every city and in the rearrangement and mutations of railroad property and public and private business structures everywhere. We find no statutory preparation for the organization of such machinery."
The considerations which led the Court to the conclusion that the power to compel the construction of such terminals had been withheld from the Federal Commission also make it clear that the authority which resided in the State had not been taken away except to the extent that the approval of the Federal Commission was required. The principle thus applicable has been frequently stated. It is that the Congress may circumscribe its regulation and occupy a limited field, and that the *393 intention to supersede the exercise by the State of its authority as to matters not covered by the federal legislation is not to be implied unless the Act of Congress fairly interpreted is in conflict with the law of the State. Savage v. Jones, 225 U.S. 501, 533; Atlantic Coast Line R. Co. v. Georgia, 234 U.S. 280, 293, 294; Southern Ry. Co. v. Railroad Comm., 236 U.S. 439, 446; Illinois Central R. Co. v. Public Utilities Comm., 245 U.S. 493, 510; Carey v. South Dakota, 250 U.S. 118, 122; Lehigh Valley R. Co. v. Public Utility Commrs., 278 U.S. 24, 35; International Shoe Co. v. Pinkus, 278 U.S. 261, 265. We find no such conflict in this case, as the approval of the Interstate Commerce Commission has been obtained, and its certificate of public convenience and necessity has been issued, in relation to the rearrangement, extensions and abandonment of tracks, and the use of the terminal facilities, involved in the proposed plan, and nothing further was required by the Interstate Commerce Act.
Second. The appellants further insist that the certificates of the Interstate Commerce Commission are void. The point is that the certificates were not issued upon the application of the Railway Companies but in proceedings adverse to them and over their protest. It is urged that paragraphs 18 to 20 of § 1 of the Interstate Commerce Act give the Commission no power to issue such certificates except upon application of the carriers, and that the certificates were also unauthorized under paragraph 21 of that section.
The provisions of these paragraphs (18 to 21) contain no such limitation as that suggested. While they relate "to the construction, acquisition, extension and abandonment of a railroad," and "deal primarily with rights sought to be exercised by the carrier" (Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. United States, 275 U.S. 404, 408) these paragraphs do not exclude appropriate action by the Commission upon applications by *394 those who have a proper interest in the subject matter, although they are not carriers. If the State could be deemed to have no authority to compel the building of such a union terminal as that here involved, the question would not arise. But if the State originally had this authority, and the federal legislation has not superseded it, but has required, as this Court has held, a certificate of public convenience and necessity from the Interstate Commerce Commission as a condition precedent to the validity of any order on the part of the State Commission, we find no warrant for construing the statute as precluding the application which is necessary to obtain such a certificate. In its first opinion, this Court said that it was advised that the City of Los Angeles had filed a petition with the Interstate Commerce Commission and that the Court thought that the course taken by the City "was the correct one." 264 U.S. pp. 347, 348. While the statement was obiter, it intimated an opinion which has been confirmed by further consideration of the purpose and terms of the statute. Nothing was said in the second opinion contrary to that view. The approval of the Interstate Commerce Commission and the issue of its certificate of public convenience and necessity being indispensable under the Act, application could properly be made by the authorities of the State, assuming that with such certificate they were entitled to require the establishment of the station.
Third. We are thus brought to the contention of the appellants that the order of the State Commission deprives the Railway Companies of their property without due process of law, and denies to them the equal protection of the laws, in violation of the Fourteenth Amendment of the Federal Constitution.
The principle that the State, directly or through an authorized commission, may require railroad companies *395 to provide reasonably adequate and suitable facilities for the convenience of the communities served by them, has frequently been applied. Wisconsin, Minn. & Pac. R. Co. v. Jacobson, 179 U.S. 287, 296, 301; Atlantic Coast Line R. Co. v. North Carolina Corp. Comm., 206 U.S. 1, 26, 27; Missouri Pacific Ry. Co. v. Kansas, 216 U.S. 262, 279; Seaboard Air Line Ry. Co. v. Railroad Comm., 240 U.S. 324, 327; Mississippi R.R. Comm. v. Mobile & Ohio R. Co., 244 U.S. 388, 390, 391; Erie R. Co. v. Public Utility Commrs., 254 U.S. 394, 409, 410. Railroad carriers may be compelled by state legislation to establish stations at proper places for the convenience of their patrons.[3]Minneapolis & St. L.R. Co. v. Minnesota, 193 U.S. 53, 63. They may be required at their own expense to construct bridges or viaducts whenever the elimination of grade crossings may reasonably be insisted upon, whether constructed before or after the building of the railroads, Missouri, Kansas & Texas Ry. Co. v. Oklahoma, 271 U.S. 303, 307. But the power to regulate is not unlimited. "It may not unnecessarily or arbitrarily trammel or interfere with the operation and conduct of railroad properties and business." Norfolk & Western Ry. Co. v. Public Service Comm., 265 U.S. 70, 74; Mississippi *396 Railroad Comm. v. Mobile & Ohio R. Co., supra. The question in each case is whether, in the light of the facts disclosed, the regulation is essentially an unreasonable one. Wisconsin, Minnesota & Pacific R. Co. v. Jacobson, supra; Norfolk & Western Ry. Co. v. Public Service Comm., supra. And "the matter of expense is an important criterion to be taken into view in determining the reasonableness of the order." Oregon R. & Nav. Co. v. Fairchild, 224 U.S. 510, 529.
In the present case, careful inquiry has been made into all the relevant facts. There have been three hearings before the State Commission and two hearings before the Interstate Commerce Commission. The inadequacy of existing facilities has been shown and the relative merits of various plans have been the subject of elaborate study. The expense involved in the plan adopted, when considered in relation to the importance of the interests affected and to be served, does not appear to be so large as to warrant the condemnation of the plan as unreasonable and beyond the authority of the State. In its second report, pursuant to which the certificate of public convenience and necessity was issued, the Interstate Commerce Commission said (142 I.C.C., 495, 496):
"It will be observed that our findings of fact in the original report, previously set out, are in effect duplicated by findings numbered 1 to 6 of the Railroad Commission of the State of California in its decision of July 8, 1927, as appears in Appendix 1 hereto. The State Commission in addition found (7) that the present and future public convenience and necessity require and will require the construction by defendants and each of them of a union passenger station within that portion of Los Angeles described in the third finding, with the track and other facilities reasonably necessary, convenient, or incidental to the use of such passenger station; (8) that in its opinion *397 an adequate union passenger station could be constructed within the described portion of the city at a cost of approximately $10,000,000, in substantial compliance with the plan outlined in its Exhibit 4-B, which is found to be in all essential respects similar to the plan considered by us in our original decision and report; (9) that such plan for a union passenger station in the Plaza portion of Los Angeles in the opinion of the State Commission is and would be in the public interest, and that its construction is practicable, without impairing the ability of the defendants to perform their respective duties to the public; and (10) that such construction ought reasonably to be made. . . . All of the testimony of record in the original proceeding before us was examined and given careful analysis in our original report. We adhere to the conclusions there expressed, upon a further consideration of the whole record, including the subsequently imported testimony taken before the California Commission. In our judgment, the findings of the California Commission numbered 7 to 10, inclusive, as appears in the appendix and as above summarized, find sufficient support in the record."
We find no basis for the conclusion that the findings of fact are unsupported by evidence, or that, in view of the facts thus ascertained, the order of the State Commission is unreasonable or arbitrary.
In this view, the judgments of the Supreme Court of the State are affirmed.
Judgments affirmed.
MR. JUSTICE McREYNOLDS is of opinion that the judgment of the court below should be reversed upon the ground that the assailed order of the Railroad Commission is arbitrary, unreasonable, and beyond any power which the State is competent to confer.
NOTES
[1] See Interstate Commerce Commission v. U.S. ex rel. Los Angeles, 280 U.S. 52, 61.
[2] Id., pp. 62, 63.
[3] In its second opinion in relation to the present controversy, this Court cited the state court decisions with respect to requirements for the building of union stations, as follows (280 U.S., pp. 67, 68): "There are cases in the state courts in which by virtue of statutory provision railroads are required expressly to unite in a passenger station, if determined by Commissioners appointed by the Court or by a Railroad Commission. Mayor and Aldermen' of Worcester v. Norwich & Worcester R. Co., 109 Mass. 103, 113; Railroad Commission v. Alabama Northern R. Co., 182 Ala. 357; Railroad Commission v. Alabama Great Southern R. Co., 185 Ala. 354, 362; Missouri, O. & G.R. Co. v. State, 29 Okla. 640; Chicago, R.I. & P.R. Co. v. State, 90 Okla. 173; State v. St. Louis Southwestern R. Co. (Tex. Civ. App.), 165 S.W. 491, 199 S.W. 829, 930."