### WEBSTER & ATLAS NAT. BANK OF BOSTON v. PALMER et al.

No. 249.

Circuit Court of Appeals, Second Circuit.

April 16, 1940.

Robert H. Davison, of Boston, Mass. (Haussermann, Davison & Shattuck and Oscar W. Haussermann, all of Boston, Mass., on the brief), for appellant.

Hermon J. Wells, of New Haven, Conn. (J. H. Gardner, Jr., of New Haven, Conn., of counsel), for appellees.

Henry Parkman, Jr., Corp. Counsel, and Robert H. Hopkins, Asst. Corp. Counsel, both of Boston, Mass., amici curiae.

Before SWAN, CLARK, and PATTERSON, Circuit Judges.

CLARK, Circuit Judge.

In October, 1935, the New Haven Railroad filed its petition for reorganization in the District Court of the United States for the District of Connecticut. In June, 1936, its trustees rejected the lease under which

the New Haven had rented the lines of the Old Colony Railroad Company. Immediately thereafter, the Old Colony petitioned for reorganization in the same court and the trustees of the New Haven were appointed trustees of the Old Colony. Since the Old Colony was wholly unable to operate its lines alone, the district judge, pursuant to the mandate of Bankruptcy Act, § 77, sub. c. (6), 11 U.S.C.A. § 205, sub. c. (6), ordered the trustees of the New Haven to continue to operate the lines of the Old Colony until further notice, "such operation to be for the account of the Old Colony." In 1938, the trustees of the Old Colony rejected its lease of the lines of the Boston and Providence Railroad Corporation. The Boston and Providence is similarly unequipped for independent operation; the district judge therefore ordered the New Haven trustees to operate for the account of the Boston and Providence, under the same statute.

A segregation formula, allocating revenues and expenses among the various mortgaged and leased lines, was prepared by the New Haven trustees and after hearings the Interstate Commerce Commission recommended its acceptance by the court. The district court did so and we affirmed. Palmer v. Palmer, 2 Cir., 104 F.2d 161, certiorari denied, 60 S.Ct. 120, 84 L.Ed. ——. Under that formula, it appears that both the Old Colony and the Boston and Providence suffer heavy operating deficits each year. These deficits are met by the New Haven trustees out of New Haven funds; the New Haven in turn has been given a prior lien upon all the assets of the two operated roads. Palmer v. Warren, 2 Cir., 108 F.2d 164, certiorari granted 60 S.Ct. 607, 84 L.Ed. ——, affirmed 60 S.Ct. 865, 84 L.Ed. ——.

Deficits met by the New Haven now exceed $20,000,000. It has become apparent that the prior lien afforded the New Haven is not a sufficient security to warrant the diversion of additional funds, without jeopardy to the claims of New Haven's own secured creditors. The New Haven trustees have made several efforts to reduce their outlays on behalf of the Old Colony and the Boston and Providence. They obtained an order permitting the abandonment of 88 unprofitable Massachusetts stations, but we reversed that order for failure to comply with applicable state laws. Converse v. Massachusetts, 2 Cir., 101 F.2d 48, affirmed sub. nom., Palmer v. Massachusetts, 308 U.S. 79, 60 S.Ct. 34, 84 L.Ed.——.

The present suit is another attempt to reduce the New Haven's contribution to the deficits of its lessors. On their petition the New Haven trustees were granted an order below instructing them to withhold further payment of real estate taxes levied upon properties of the Old Colony and Boston and Providence Railroads in Massachusetts and Rhode Island, as well as further payment of real estate taxes, franchise taxes, and bond interest owed by the Boston Terminal Company, which operates South Station in Boston. The trustee of the Boston Terminal Company's first mortgage bonds appeared below in opposition, and now appeals.[1] Counsel for the City of Boston, which also appeared below, but did not appeal, have been permitted to file a brief as amici curiae herein.

The items as to which the trustees sought and received instructions in the order below concerned (a) taxes due the City of Boston, assessed upon the South Station property, amounting to $446,880; (b) franchise taxes of $13,600 due the Commonwealth of Massachusetts from the Boston Terminal Company; and (c) interest due on the first mortgage bonds of the Terminal Company of $93,842. The court also directed that taxes of approximately $689,000 assessed by various Massachusetts and Rhode Island towns against the Old Colony and the Boston and Providence be not paid; but the towns were not parties below and this part of the order is not before us on this appeal. The only items now directly involved are the taxes and interest owed because of the erection and maintenance of South Station. All of these represent current charges; prior charges have been paid by the New Haven trustees.

In 1896, the Commonwealth of Massachusetts required the railroads serving Boston from the south and west to erect and use a union station. These railroads became stockholders of the Boston Terminal Company, chartered pursuant to Chap. 516 of the Special Acts of Massachusetts of 1896. That Act required five named railroads to use the station; those railroads were bound by Section 10 of the Act to pay

---

[1] The Old Colony Trust Co. was trustee of the Terminal Co.'s bonds until after this appeal was taken, at which time the Webster and Atlas National Bank became successor trustee and was substituted as appellant.

218

to the Terminal Company "for such use, in monthly payments, such amounts as may be necessary to pay the expenses of its corporate administration and of the maintenance and operation of said station, and of the facilities connected therewith and owned by said terminal company, including insurance and all repairs, all taxes and assessments which may be required to be paid by said terminal company, the interest upon its bonds or other obligations issued under the provisions of this act as the same shall become payable, and a dividend, not to exceed four per cent per annum, upon its capital stock." Section 10 also provided that each of the said railroad companies should pay "for such use" in the proportion in which it had the use thereof, to be fixed by agreement, or by decision of the state board of railroad commissioners, and the payments thus required to be made by the railroad companies to the terminal company "shall be deemed a part of their operating expenses, and the supreme judicial court or any justice thereof shall have jurisdiction in equity to compel such payments to be made, either by mandatory injunction or by other suitable process."

The railroads named in the statute included the Boston and Albany, the Boston and Providence, the Old Colony, and the New Haven, "being lessee of the Old Colony Railroad Company." When the New York Central leased the Boston and Albany Railroad, the statute was amended so as to include the former, also as "lessee." Mass.Acts 1921, c. 363. Under the legislative authorization the Terminal Company built and has since operated South Station as a union passenger station in Boston. The burdens of maintenance, as required by Section 10 of the Act, have been allocated among the railroads, according to use, by the Massachusetts Department of Utilities, which succeeded the board of railroad commissioners. While the New Haven has not acquiesced in the Department's findings, the proportions established by the Department (30% to the Boston and Albany, 70% to the New Haven group) are not here in issue.

■ The power of an equity court to rid an insolvent railroad of an unprofitable lease was modified by the 1935 amendments to Bankruptcy Act, § 77. The public convenience dictates continued operation of the leased line so long as practicable, yet rejection often would leave the line in possession of a lessor with no operating staff.

Accordingly, § 77, sub. c. (6), now provides that, upon rejection of a lease of a line of railroad, the lessor has the duty to begin the operation of the line, "unless the judge, upon the petition of the lessor, shall decree after hearing that it would be impracticable and contrary to the public interest for the lessor to operate the said line, in which event it shall be the duty of the lessee to continue operation on or for the account of the lessor until the abandonment of such line is authorized by the Commission in accordance with the provisions of section 1 of the Interstate Commerce Act as amended [49 U.S.C.A. § 1]." While it was recognized at the time that this provision would greatly inconvenience lessees [see Hearings before House Committee on the Judiciary on H. R. 6429, 74th Cong., 1st Sess. (1935) 145, 146], there was until recently no apparent consideration of the possibility that lessees in reorganization might have to meet operating deficits incurred on behalf of lessors. See Meck and Masten, Railroad Leases and Reorganization, 49 Yale L. J. 626, 658. We are convinced, however, that under this statute the lessee or its representatives must operate the leased line until the Commission permits abandonment. Even if the indispensable costs of operation result in net loss, that loss must be met, if necessary, out of the funds of the lessee. It matters not that it has "rejected" the lease, for it may "reject" only such burdens as § 77, sub. c (6), permits it to reject. The burden of operating, come what may, survives rejection.

■ The district court agreed with this view up to a point, but concluded that, since such operation must be "on or for the account of the lessor," the Act was not to be construed to require operation after the lessor's account was exhausted, and added that such a construction would bring this subdivision in conflict with the Fifth Amendment. But we think that is to read the Act in such a way as to violate its primary purpose, to safeguard the continued operation of a railroad, even at the temporary expense of the road's creditors. The ultimate continuance or discontinuance of service is a problem for the Interstate Commerce Commission or equivalent state agencies. Speaking for the Supreme Court in the Eighty-eight Stations case, Mr. Justice Frankfurter has already admonished reorganization courts that their responsibilities are shared with other governmental agencies. Specifically apposite to our pres-

ent problem is his statement: "The judicial process in bankruptcy proceedings under § 77 is, as it were, brigaded with the administrative process of the Commission. From the requirement of ratification by the Commission of the trustees appointed by the Court to the Commission's approval of the Court's plan of reorganization the authority of the Court is intertwined with that of the Commission. Thus, in § 77, sub. c, and § 77, sub. o, the power of the district courts to permit abandonments is specifically conditioned on authorization of such abandonments by the Commission." Palmer v. Massachusetts, supra, 308 U.S. at page 87, 60 S.Ct. at page 38, 84 L.Ed. ——.

■ Of course, the trustees, by petition to the Commission or to equivalent state authority, may seek abandonment of any or all of the Old Colony, Boston and Providence, or South Station services. The Commission and the state agencies are as responsible agencies of government as are the courts; there is no reason to suppose that they, any more than judges, will or can order the impossible or refuse to accept the inevitable. At any rate there the responsibility has been placed by Congress. And we think the constitutionality of §§ 77, sub. c (6), and 77, sub. o, is established by. the cases upholding the provisions of the Interstate Commerce Act, 49 U.S.C.A. § 1, et seq., placing control of abandonment of interstate railroads with the Commission. Colorado v. United States, 271 U.S. 153, 46 S.Ct. 452, 70 L.Ed. 878; Palmer v. Massachusetts, supra.

The New Haven trustees have in fact been meeting those deficits out of funds in the New Haven estate, and the New Haven has been left simply with its prior lien on the assets of its lessors, under the statutory provision that operations shall be for the lessor's account. But the trustees now contend that, inasmuch as they have been permitted to reject the lease, they should be relieved of all obligations under the lease except those the performance of which is vitally necessary to continued operation of the road. The public convenience is sufficiently served if operation continues. So, they say, the lessee may still be relieved of the duty of paying obligations of the lessor when payment is not absolutely vital to the continuation of service. Neither the payment of taxes nor the payment of interest is immediately necessary to continued op-

eration. The bondholders are obviously impotent, for the New Haven, the Old Colony, and the Boston and Providence are all in reorganization.[2] And despite the Act of Aug. 21, 1937, 50 Stat. 738, 28 U.S.C.A. § 41(1), denying jurisdiction to the federal district courts to enjoin the collection of state taxes, where a remedy exists in the state courts, a reorganization court may, in its discretion, continue indefinitely to hold off the tax gatherer from taking direct action against the property. Board of Directors of St. Francis Levee Dist. v. Kurn, 8 Cir., 98 F.2d 394, 397, certiorari denied 305 U.S. 647, 59 S.Ct. 153, 83 L.Ed. 418.

It is contended, however, that both the taxes and the interest are "operating expenses," as the Massachusetts statute provides. But it is not necessary to pass on whether either type of payment is an operating expense, nor need we decide whether § 77, sub. c (6), in and of itself, requires the lessee to pay such expenses not indispensable to the continuance of railroad operations. Whatever the answer to these perplexing questions, federal statutes impose upon the New Haven trustees a direct duty to meet both the tax and the interest charges.

28 U.S.C.A. § 124a, enacted in 1934, declares that "Any receiver, liquidator, referee, trustee, or other officers or agents appointed by any United States court who is authorized by said court to conduct any business, or who does conduct any business, shall, from and after June 18, 1934, be subject to all State and local taxes applicable to such business the same as if such business were conducted by an individual or corporation * * *." This section was applied generally, even against the bankruptcy trustee's claim of lack of funds, in Ingels v. Boteler, 9 Cir., 100 F.2d 915, affirmed 308 U.S. 57, 60 S.Ct. 29, 84 L.Ed. ——. And it was held applicable to a railroad's trustee under § 77. Thompson v. Louisiana, 8 Cir., 98 F.2d 108, 111.

■ The district court held, however, that even if this statute ordinarily applied to railroad trustees, yet it did not apply when such officers were operating only for account of a lessor road under § 77, sub. c (6). But we believe that, since that statute has placed the duty of operation upon the lessee, the lessee's trustees are thereby made "agents of the court" within the mean-

[2] Since the order was entered below, the Terminal Company has also gone into reorganization.

ing of 28 U.S.C.A. § 124a. The Old Colony and the Boston and Providence, were they operating their lines, would have to pay their share of the taxes levied against the Boston Terminal Company. Section 25 of the Massachusetts statute of 1896 makes them directly liable to the tax collector for the real estate taxes, and their duty under § 10 of the same Act to pay all other taxes to the Terminal Company could be enforced directly by the taxing authorities. Now by law the duties of operation have devolved upon the New Haven, as lessee, and upon the New Haven trustees. If there existed sufficient moneys of the Old Colony and the Boston and Providence, no one could gainsay the duty of the New Haven trustees to apply those moneys to payment of the taxes. In accordance with the view we have expressed above—that operation must continue until abandonment has been legally ordered, even though the New Haven trustees must go for funds to the New Haven estate—we conclude that under 28 U.S.C.A. § 124a taxes legally assessed by state and local authorities must be paid by the New Haven trustees while operation continues.

■ Similar considerations apply to the payment of the interest on the bonds. As we have seen, the Massachusetts Act of 1896, establishing the Boston Terminal Company, made it the express duty of the Old Colony and the Boston and Providence to pay their proportionate shares of the interest on Terminal Company bonds. 28 U.S.C.A. § 124 (1887), which is § 65 of the Judicial Code, states that "Whenever in any cause pending in any court of the United States there shall be a receiver or manager in possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the state in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." A criminal penalty is also provided for violation of the statute. We feel that this section exercises a compulsion for the payment of the interest charges similar to that of § 124a for the taxes.

It is true that the federal statute speaks only of a "receiver or manager." We have intimated that a railroad's trustee under § 77 is included within this class. Converse v. Massachusetts, supra, 101 F.2d at page 51. See also Palmer v. Massachusetts, su- pra, 308 U.S. at page 90, n. 17, 60 S.Ct. 34, 84 L.Ed. ——. That would mean, at most, that the trustees of the Boston and Providence and the trustees of the Old Colony are bound to obey the Massachusetts statute, to the extent of the funds available in their respective estates. But before the funds of the New Haven can be applied to the purposes of the Massachusetts statute, we must say that the trustees of the New Haven stand in such relation to the Old Colony and the Boston and Providence that they may be deemed the "receiver or manager" of the Old Colony and the Boston and Providence, within the meaning of § 124. We think they may. The statute speaks of a "receiver or manager in possession of any property" and refers to the duty to "manage and operate such property." It cannot be gainsaid that the New Haven trustees are in possession, and managing and operating the properties, of the Old Colony and the Boston and Providence. The words "receiver or manager" are broad enough to refer to any court officer performing these functions.

■■ Section 124 may not require compliance with any and all state laws, but it does require compliance with this particular Massachusetts statute. It is beyond question that state statutes relating to speed of trains, abandonment of lines, liability for negligence, the medium in which wages are paid, and other similar police regulations must be obeyed by the receivers of a railroad. Erb v. Morasch, 177 U.S. 584, 20 S.Ct. 819, 44 L.Ed. 897; Pittsburgh & Shawmut Coal Co. v. Delaware & N. R. Co., D.C.N.D.N.Y., 289 F. 133; Hornsby v. Eddy, 8 Cir., 56 F. 461; Peirce v. Van Dusen, 6 Cir., 78 F. 693; Converse v. Massachusetts, supra; Burke v. Morphy, 2 Cir., 109 F.2d 572. Compliance with these laws in no way interferes with the federal equity and bankruptcy powers upon which the reorganization of railroads is based. In so far as the Massachusetts statute requires the named railroads to use South Station, it is undoubtedly a valid exercise of the police power. Mayor and Aldermen of Worcester v. Norwich & Worcester R. R. Co., 109 Mass. 103.

■ Such a statute may properly impose the costs of construction and operation upon the railroads concerned, so long as the expense is not so great as to be confiscatory, when considered in relation to the importance of the interests to be affected and to be served. Atchison, T. & S. F. R. Co. v.

Railroad Commission, 283 U.S. 380, 396, 51 S.Ct. 553, 75 L.Ed. 1128. The Massachusetts Act of 1896 has imposed these expenses upon the named railroads by ordering them to pay to the Terminal Company all costs of operation, including bond interest on the Terminal Company bonds. Until such time as that law is amended or declared invalid, it must be obeyed. This record does not present any evidence that the charges are unreasonable or any basis for a declaration that the law is invalid.

In the view which we have taken of the case, it is not necessary for us to decide whether the provisions of the Massachusetts Act of 1896, imposing direct obligations on the New Haven, "being lessee" of the Old Colony, continue to bind the New Haven after it had rejected the lease. In any event, the New Haven trustees, while operating the railroad pursuant to the court's order under § 77, sub. c (6), are bound to pay the taxes and the interest charges for the reasons stated above.

Reversed.