IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MAY 1999 SESSION

FILED

July 8, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 02C01-9807-CR-00206 |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. ARTHUR T. BENNETT, |
| HARRY L. ROBINSON, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Especially Aggravated Robbery; |
| | ) | Criminally Negligent Homicide) |

FOR THE APPELLANT:

JAMES V. BALL
217 Exchange Ave.
Memphis, TN  38105-3503

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General and Reporter

J. ROSS DYER
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN  37243-0493

WILLIAM L. GIBBONS
District Attorney General

THOMAS D. HENDERSON
GLEN BAITY
Asst. District Attorneys General
201 Poplar Ave. , Suite 301
Memphis, TN  38103-1947

OPINION FILED: _____

AFFIRMED

JOE G. RILEY,
JUDGE

## OPINION

Defendant, Harry L. Robinson, was charged with premeditated murder, felony murder, attempted first degree murder, and two counts of especially aggravated robbery. A Shelby County jury convicted defendant of criminally negligent homicide and two counts of especially aggravated robbery, and acquitted him of the remaining charges. The trial court sentenced defendant as a Range I standard offender to two concurrent twenty-five-year terms for the robberies, and a consecutive two-year term for the homicide. In this appeal as of right, defendant contends that the evidence is insufficient to support his convictions, and that the jury's verdicts are inconsistent. Upon our review of the record, we **AFFIRM** the judgment below.

## FACTS

On April 16, 1994, Sung Su Kim was working in his small grocery store with his aunt, Chae Sim Kim. He testified that two young men came in and tried to buy beer. He refused to sell it to them because they lacked identification. The men left and returned a few minutes later, claiming to have identification. Mr. Kim again refused to sell them beer because they were too young. The men left again. Some time later he heard someone say, "Hey," and he turned around. The two men had returned and one of them shot him in the face and chest. After he fell to the floor, he was shot in the leg. While on the floor, he heard another gunshot. He heard the sound of coins, some mumbling, and one person saying, "Let's go, let's go." After the attackers left, Mr. Kim crawled to the phone and called 911. Ms. Kim was on the floor behind the counter, unconscious. Mr. Kim could not recall whether he saw a third man in the store. Ms. Kim died as a result of a gunshot wound to the head; Mr. Kim miraculously survived.

Carolyn Gunn testified that she drove up to Kim's store with her son. Her son told her not to get out of the car because he heard shooting. She then saw at least one man run out and thought she remembered another person running out with him. She testified the two men ran to a white car in which a third person was sitting.

Kevin Dewayne Parker, Gunn's son, testified that he heard gunshots when he and his mother arrived at the store. He saw two teenaged men run out of the store, get into a white car and drive off. A third person was in the car. Parker recognized co-defendant McClure as one of the two men who ran out of the store.

Jeanette Newby testified that her nephew, Charles Speed, along with McClure and defendant, came to her apartment after the robbery. They had money and a gun, and Speed told McClure that he should not have killed those people. McClure told Speed not to worry as he had killed other people and gotten away with it. Defendant said, "they couldn't even get the cash register open." They split the money three ways. Defendant took a share of the proceeds, but Speed refused to take his share. McClure left the gun at her apartment. She called the police after the three men left and turned the gun over to them.

Defendant's statement to the police was read to the jury, and he also testified. According to the defendant, he spent the day riding around with McClure and Speed. McClure showed them a .25 caliber handgun and talked about robbing someone named "Baby Brother." McClure abandoned this plan because they had only one gun. Later, Speed and McClure discussed robbing a store. The three then visited two stores but did not rob them. Eventually, they stopped at Mr. Kim's store. According to defendant, Speed tried to buy beer but could not because he had no identification. McClure also tried and failed. Finally, they asked an older man to buy the beer, which he did.

3

As they were preparing to leave, Speed and McClure discussed robbing the store. McClure stated he was going to shoot the man but not the woman. Defendant testified that McClure told him he (defendant) was going to drive. When defendant refused, McClure threatened him with the gun. Defendant then got in the driver's seat and Speed went in the store. McClure followed him several seconds later.

Defendant testified that he heard five gunshots, and then Speed and McClure walked out of the store and to the car. As defendant started to drive off, they told him he was not driving fast enough, and McClure told defendant he had killed two people. Defendant stopped the car, and McClure ordered him to get out and let Speed drive. They drove to a restaurant, parked the car, and got out. Defendant testified that he walked one way and Speed and McClure walked another. He denied going to Newby's apartment and denied taking any money from the robbery.

## SUFFICIENCY OF THE EVIDENCE

Defendant first contends that there is not sufficient proof to sustain his two convictions for especially aggravated robbery. When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the state is entitled to the strongest legitimate view of the evidence and all inferences therefrom. *Id.* Because a verdict of guilt removes the

4

presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact.  State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

## A. Especially Aggravated Robbery

Especially aggravated robbery consists of the following elements:

> (1)  the intentional or knowing theft of property from the person of another by violence or putting the person in fear;
>
> (2)  accomplished with a deadly weapon; and
>
> (3)  the victim suffers serious bodily injury.

Tenn.Code Ann. §§ 39-13-401(a), 403(a).  "Serious bodily injury" is defined as bodily injury involving a substantial risk of death; protracted unconsciousness; extreme physical pain; protracted or obvious disfigurement; or protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty. Tenn.Code Ann. § 39-11-106(a)(34).  There is no question but that especially aggravated robberies were committed.[1]  Therefore, the only issue is whether the evidence is sufficient to prove defendant's role in these crimes.

Although there was no testimony that defendant entered the store or that he pulled the trigger, such proof is not necessary to convict defendant.  "A person is criminally responsible for an offense committed by the conduct of another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or

---

[1]One victim was killed.  The other was shot three times, including once in the face and once in the chest, requiring hospitalization for approximately a week.

5

attempts to aid another person to commit the offense." Tenn.Code Ann. § 39-11-402(2).[2] Clearly, defendant aided in the commission of the robberies by driving the "getaway" car, even if only for a short distance.

Defendant denies that he participated willingly, claiming that he acted under duress. Newby testified that defendant accompanied her nephew and McClure to her apartment after the robbery, that defendant complained about the inability to open the cash register, and that he took a portion of the money. Newby's testimony supports the inference that defendant drove McClure and Speed away from the scene of the robberies with the requisite criminal intent . The jury obviously chose to believe Newby's testimony over defendant's. This is the jury's prerogative. This issue is, therefore, without merit.

## B. Criminally Negligent Homicide

Defendant also contends that the proof is insufficient to support his conviction of criminally negligent homicide. That offense is defined as criminally negligent conduct which results in death. Tenn.Code Ann. § 39-13-212(a). The statutory definition of criminally negligent conduct

> refers to a person who acts with criminal negligence with respect to the circumstances surrounding that person's conduct or the result of that conduct when the person ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Tenn.Code Ann. §§ 39-11-106(a)(4), 302(d). In construing this definition, our Court found that it

> relates to (1) the defendant's conduct, (2) a substantial and unjustifiable risk existing at the time of the conduct or resulting from the conduct, (3) the defendant's failure

---

[2]The jury charge contained an instruction on criminal responsibility for the conduct of another.

> at the time of the conduct to perceive the risk, and (4)
> that failure being a gross deviation from the standard of
> care of an ordinary person under the circumstances.

State v. Butler, 880 S.W.2d 395, 397 (Tenn. Crim. App. 1994). We further noted that intentional, knowing or reckless acts will also suffice to establish criminal negligence. *Id.* at 397-98; *see also* Tenn.Code Ann. § 39-11-301(a)(2).

The evidence, viewed in a light most favorable to the state, proved that defendant knew McClure had a gun and that he intended to shoot at least one person in the store. The risk that someone would be killed was substantial and unjustifiable. Defendant's conduct in participating in the robbery and ignoring that risk was a gross deviation from an ordinary person's standard of care. The evidence is, therefore, sufficient to support the jury's verdict. This issue is without merit.

## INCONSISTENT VERDICTS

Finally, defendant complains that the jury's verdict of guilt on the especially aggravated robberies is inconsistent with his acquittal of attempted first degree murder and his conviction of criminally negligent homicide instead of murder. He argues that, if the jury found he did not possess the intent necessary to commit murder, he must not have possessed the intent necessary to commit robbery. We are not persuaded.

Our Supreme Court has held that consistency in verdicts is unnecessary. Wiggins v. State, 498 S.W.2d 92, 93-4 (Tenn. 1973) (relying on Dunn v. United States, 283 U.S. 390 (1932)). Reasoning that "[a]n acquittal on one [charge] cannot be considered res judicata to another [charge] even though both [charges] stem from the same criminal transaction," Wiggins, 498 S.W.2d at 94, the Court refused to overturn a seemingly inconsistent verdict where the evidence established the defendant's guilt of the convicted offense.

The evidence in this case establishes defendant's guilt of criminally negligent homicide and two especially aggravated robberies. Any inconsistencies in the jury's verdicts are, therefore, irrelevant. This issue is without merit.

8

The judgment below is **AFFIRMED**.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**JOHN H. PEAY, JUDGE**

_____
**THOMAS T. WOODALL, JUDGE**

8